LINCOLN COTTON MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14541, 17624, 30395. Promulgated March 1, 1929.

*J. M. Chenoweth, Esq.*, and *Conrad Wolf, Esq.*, for the petitioner.
*A. H. Murray, Esq.*, and *Stanley B. Pierson, Esq.*, for the respondent.

684

## OPINION.

STERNHAGEN: The record in this proceeding is in the utmost confusion and it is only with the greatest difficulty that the Board has decided it. Upon discursive pleadings the evidence was submitted, consisting of identified books and reports which were said, without objection, to contain the facts. It was only when they were examined that their lack of clarity became apparent. Despite the petitioner's charge that respondent's determination was both incorrect and inconsistent, no brief or other explanation was filed by respondent. As to both parties we have in some respects been required to ascertain the scope of the issues from ambiguous and equivocal allegations and statements. Thus the disposition here made must be read in the light of the conglomerate record upon which it is based.

The first issue relates to the respondent's allowance of inadequate deductions for depreciation on machinery and equipment during all of the years before us.

The petitioner states in its brief:

The costs of machinery and equipment to March 1, 1913, and to December 31, 1919, the dates of its acquisition, and the rates of depreciation applicable to it for the taxable years are all admitted by the Commissioner as claimed by the Petitioner.

Based upon what it conceives to be the admitted facts, the petitioner makes a computation of depreciation sustained during the years involved and asks that it be substituted for the respondent's computation.

There are a number of reasons why the petitioner's computation can not be accepted. In the first place, the petitioner has assumed that cost depreciated to March 1, 1913, is equivalent to the fair market value on that date. There is no evidence tending to show that the depreciated cost of the assets involved is equal to fair market value, and we are not justified in making the assumption.

Secondly, it can not be granted that cost of the assets acquired for stock has been established. The petition alleges and the answer admits cost only in terms of the par value of stock issued. The evidence introduced to establish that the par value of the stock, set up on the books as cost, is equivalent to cost is too meager to accomplish its purpose. Other evidence establishing the value either of the stock or of the assets acquired therefor is lacking.

But even if the Board were prepared to accept the theory underlying petitioner's computation as correct, it would avail it nothing, not only for the reasons assigned above, but also because the rate of depreciation has not been proved. The petitioner assumes an original life of 20 years and uses a rate of 5 per cent. There is not enough in the record to establish this or any other rate as the correct rate for the years involved when applied to cost as a basis. The fact that the respondent has used this rate in years prior to 1920 (in some small part) and in subsequent years on assets acquired after 1920 is not sufficient.

Finally, the petitioner's computation ignores the depreciation allowed by the respondent for years prior to 1920. In computing income for 1916, 1917, 1918, and 1919, the respondent allowed depreciation on machinery and equipment at the rate of 10 per cent, using book figures as a basis, except that in making adjustments for 1917, 1918, and 1919, 5 per cent was allowed on the $63,300 erroneously charged to the machinery and equipment accounts. For 1920 and subsequent years the respondent, apparently apprehending that depreciation allowances were exceeding the physical exhaustion of this class of assets, reduced the basis for depreciation of assets acquired prior to January 1, 1920, to a " depreciated value " as of that date of $29,306.16 and allowed depreciation at the rate of 10 per cent annually thereon, and upon assets acquired thereafter allowed depreciation at the rate of 5 per cent annually, limiting the latter allowance to 2½ per cent for additions during the year.

The depreciated value of $29,306.16 was computed as follows:

Machinery accounts shown on books Jan. 1, 1920_____ $322, 716. 69
Donated stock credited to machinery in 1907_____ 63, 300. 00

                                                                386, 016. 69
Less:
    Discount on preferred stock debited to machinery
      in 1904 _____ $12, 602. 37
    Organization expenses debited to machinery in
      1904 _____ 7, 972. 81
                                                      _____  20, 575. 18

                                                                365, 441. 51
Total depreciation allowed for years prior to 1920_____ 336, 125. 35

Depreciated value Jan. 1, 1920_____  29, 306. 16

It may be that a computation allocating to each year involved an amount of depreciation determined by apportioning the cost of the assets equally over the period of their expected life would be proper in these proceedings; but where the respondent has determined, as he has, that present and future depreciation must be adjusted because of the accumulated depreciation reserve, it is incumbent upon the petitioner to show that the respondent's computation is incorrect. As was said in the case of *Alpin J. Cameron et al.*, 8 B. T. A. 120, 130:

* * * The Board will not lightly conclude that deductions from gross income in prior years through allowances for exhaustion, wear and tear of property used in the trade or business were unwarranted and excessive, and direct adjustment thereof so that a taxpayer may in subsequent years secure the benefit of a greater deduction from income for exhaustion, wear and tear than [that] to which he would otherwise be entitled. We have held that we will not permit the Commissioner to adjust invested capital for taxable years upon the ground that the taxpayer has taken inadequate depreciation in prior years, in the absence of a clear showing that the depreciation charged upon the books or claimed in the returns was inadequate. *Russell Milling Co.*, 1 B. T. A. 194; *Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Rub-No-More Co.*, 1 B. T. A. 228. And, when a taxpayer claims that the Board should go back and redetermine the useful life of the property and recompute the depreciation allowance over a long period of years long since barred by the statute of limitation, so that he may obtain a greater deduction from income in the taxable year, and in fact obtain the benefit of a double deduction from income, he must satisfy the Board by clear and convincing evidence that he is in justice entitled to such adjustment. The allowance of the deduction from income for exhaustion, wear and tear of property is for the benefit of the taxpayer and when he has been given a liberal allowance in prior years, when the tax rates were high, he should not be heard to say upon a mere showing that in the taxable years the property is still in use and giving good service, that the depreciation claimed and allowed after a full consideration of the facts in prior years should be disregarded and an allowance made which will permit of the exhaustion of the same or a portion of the capital investment the second time.

To the same effect is *St. Louis Malleable Casting Co.*, 9 B. T. A. 110, 117. See also *Sterling Coal Co.*, 8 B. T. A. 549; *Philadelphia Quartz Co.*, 13 B. T. A. 1146; and *Kehota Mining Co.* v. *Lewellyn*, 28 Fed. (2d) 995, where questions involving deductions for depletion are similarly treated.

692

The respondent's computation of depreciation for 1920 is, notwithstanding, obviously incorrect. It takes no account of the March 1, 1913, value of assets in existence at that time and on hand January 1, 1920, starting instead with book figures purporting to represent cost. But we are unable to direct a recomputation in this respect because of the absence of proof of value as of March 1, 1913. *Bischoff v. Commissioner*, 6 B. T. A. 570; affd. 27 Fed. (2d) 91.

To a certain extent error is clear. The respondent has admitted that the amount of $336,125.35, deducted from the book cost as allowed depreciation, includes depreciation on the items of $7,972.81 and $12,602.37, alleged organization expense and discount on stock, which items were specifically excluded from the base upon which depreciation was computed. This should be corrected upon recomputation.

A further error is apparent when it is noted that the respondent has reduced the entire base upon which he computes depreciation for 1920 to $29,306.16, although assets costing $33,873.04 were purchased in 1919, and depreciation for that year was allowed at the rate of 10 per cent. The error, though less apparent, is also present with respect to assets acquired prior thereto.

From 1915 to 1919, inclusive, the petitioner purchased machinery and equipment at a cost of $47,502.50. During each of those years the respondent allowed depreciation at the rate of 10 per cent. Segregating the cost by years as it appears in the findings of fact, and computing depreciation at the rate of 10 per cent thereon, with half that rate on assets during the year in which acquired, it will be found that depreciation totaling $6,013.55 has been sustained on such assets. The computation is as follows:

| Year | Amount | 1915 | 1916 | 1917 | 1918 | 1919 | Total |
|---|---|---|---|---|---|---|---|
| 1915 | $5,898.17 | $294.91 | $589.82 | $589.82 | $589.82 | $589.82 | $2,654.19 |
| 1916 | 42.06 | | 2.10 | 4.21 | 4.21 | 4.21 | 14.73 |
| 1917 | 4,976.00 | | | 248.80 | 497.60 | 497.60 | 1,244.00 |
| 1918 | 2,713.23 | | | | 135.66 | 271.32 | 406.98 |
| 1919 | 33,873.04 | | | | | 1,693.65 | 1,693.65 |
| Total | 47,502.50 | 294.91 | 591.92 | 842.83 | 1,227.29 | 3,056.60 | 6,013.55 |

Deducting the sustained depreciation of $6,013.55 from the cost of $47,502.50 leaves a remainder of $41,488.95, representing unimpaired capital. To the extent that this amount exceeds the basis of $29,306.16 used by the respondent ($12,182.79), he has restored to one group of assets excess depreciation by applying the amount to another group. This is clearly improper. The petitioner should be allowed to use a base of at least $41,488.95 for assets in existence on January 1, 1920, in the computation of depreciation on those assets for all the years here involved.

The second issue relates to the partial disallowance of invested capital claimed for 1920 and 1921. Petitioner contends that the respondent understated the cash value of property acquired for stock or shares, section 326 (a) (2).

For convenience, the transactions in petitioner's capital stock can be tabulated as follows:

| | Par value of stock issued | Value assigned to assets on books | Cash paid in |
|---|---|---|---|
| Preferred stock: | | | |
| September, 1902. Issued for old machinery | $89,400 | $89,400 | --- |
| September, 1903. Issued for cash | 12,000 | --- | $10,080 |
| Do | 20,000 | --- | 16,800 |
| September, 1903. Issued for new machinery | 28,600 | 28,600 | --- |
| | 150,000 | 118,000 | 26,880 |
| March, 1904. Stock returned to treasury | 3,000 | 3,000 | --- |
| | 147,000 | 115,000 | --- |
| 1911. Stock turned in and canceled in exchange for common stock | 147,000 | --- | --- |
| Common stock: | | | |
| September, 1902. Issued for old machinery | 114,900 | 114,900 | --- |
| September, 1903. Issued as a bonus and charged to asset accounts in January, 1904, as follows: | | | |
| New machinery | 7,800 | 7,800 | --- |
| Real estate | 6,500 | 6,500 | --- |
| | 129,200 | 244,200 | 26,880 |
| March, 1904. Stock donated to treasury [1] | 1,500 | 1,500 | --- |
| | 127,700 | 242,700 | --- |
| October, 1907. Stock donated to treasury [2] | 63,300 | --- | --- |
| | 64,400 | --- | --- |
| December, 1910. Purchased for $250 cash [3] | 2,500 | --- | (250) |
| | 61,900 | 242,700 | 26,630 |
| January, 1911. Stock donated to treasury [4] | 60,900 | --- | --- |
| | 1,000 | --- | --- |
| 1911. Common stock issued in exchange for preferred stock returned | 147,000 | --- | --- |
| Outstanding, Jan. 1, 1920 | 148,000 | 242,700 | 26,630 |
| May, 1920. Sold for cash | 2,000 | --- | 2,000 |
| December, 1920. Stock dividend | 300,000 | --- | --- |
| | 450,000 | 242,700 | 28,630 |

[1] Credited on the books to real estate account.
[2] Credited on the books to machinery account.
[3] The balance of the par value, amounting to $2,250, was credited to surplus account.
[4] Credited on the books to surplus account.

*Summary*

| | Par value |
|---|---|
| Sold for cash (net) | $29,500 |
| Capitalized for land (net) | 5,000 |
| Capitalized for machinery (net) | 237,700 |
| | 272,200 |
| Donated to treasury | 124,200 |
| Outstanding Jan. 1, 1920 | 148,000 |
| Sold for cash in 1920 | 2,000 |
| Dividend (charged to surplus) | 300,000 |
| Total | 450,000 |

For 1920 the respondent has allowed as invested capital $148,000. The deficiency notice states:

Your claim for paid-in surplus has not been allowed. Section 326 (a) (1) (2) (3), Revenue Acts of 1918 and 1921. The cash value of tangible assets has not been established as being in excess of the par value of the stock originally issued therefor less donated stock.

Since the adjusted balance sheet indicates an operating deficit, capital stock constitutes the invested capital for one year. Article 860, Regulations 45.

This would seem to indicate not that the respondent has deducted the par value of stock subsequently reacquired by the petitioner without cost from the value of the assets paid in for the stock when issued, as petitioner contends in substance in its brief, but rather that he has deducted the par value of the stock reacquired from the par value of the stock originally issued, and used the difference as the measure of the value of the assets paid in for stock. The pleadings, however, disclose a situation different from that outlined in the deficiency notice. The petition alleges:

The Commissioner reduced invested capital as shown by the books by $141,200 on account of the excess of book value at date of acquisition of machinery and equipment acquired for stock, over the value assigned by the Commissioner as of date of acquisition to said machinery and equipment.

The respondent answered this allegation as follows:

Denies that the Commissioner reduced taxpayer's invested capital by the amount of $141,200, on account of the excess of book value at the date of acquisition of the machinery and equipment acquired for stock over the value alleged to have been assigned by the Commissioner as of the date of acquisition of said machinery and equipment, but avers that the said reduction of invested capital referred to in paragraph 5-2 (j) of the petition, to wit, $131,200, instead of $141,200, as therein stated, is based upon taxpayer's own action in reducing its capital stock originally issued in the amount of $279,000 by the amount of $131,200, representing capital stock donated to or purchased by taxpayer as more particularly set forth in paragraph 5-2 (k) of the petition, said donations being made to offset operating losses sustained in years prior to 1916.

The determination as set forth in the deficiency notice and the averment in the respondent's answer are absolutely at variance. Not only are the two repugnant in their terms, but the conclusion stated in the deficiency notice fails to follow from the reasoning averred. The amount of invested capital to which the petitioner may be entitled, under section 326 (a) (1) and (2), by reason of cash or tangible property having been paid in for stock or shares, can not be affected by the reacquisition of stock without cost, *Central Wisconsin Creamery Co.*, 15 B. T. A. 396, or operating losses, *Kenny Brothers Co.*, 1 B. T. A. 1019; *Guarantee Construction Co.*, 2 B. T. A. 1145; *Simmons Co.*, 8 B. T. A. 631, and we are unable to see how the concurrence of the two can affect such invested capital. The situation is the reverse of a stock dividend declared and paid because of earnings realized

and retained in the business, which has no effect upon income, *Eisner* v. *Macomber*, 252 U. S. 189, or upon invested capital, *Minneapolis Sash & Door Co.*, 2 B. T. A. 505; *Valdosta Grocery Co.*, 2 B. T. A. 727; *Nature's Rival Co.*, 6 B. T. A. 294.

The inconsistency between the determination and the reasons given therefor remains after examining the following computation of petitioner's invested capital for 1921, set forth in the deficiency notice:

| | | |
|---|---:|---:|
| Capital stock outstanding | | $450,000.00 |
| Surplus shown by balance sheet | | $118,177.21 |
| Additions: | | |
|   Overassessments— | | |
|     1917 | $14,012.28 | |
| | 1,218.81 | |
| | 12,793.47 | |
|     1918 | 12,713.62 | |
|     1919 | 1,390.34 | |
| | | $26,897.43 |
|   Depreciation disallowed for 1920 | | 29,233.90 |
| | | 174,308.54 |
| Deductions: | | |
|   Depreciation for 1903 to 1915 not on books | $220,600.32 | |
|   Depreciation for 1908–1919, 12 years 5% on $63,300 restored to machinery account | 37,980.00 | |
|   Inventory adjustment | 131,598.27 | |
|   Stock canceled | 60,900.00 | |
|   Stock, par value $2,500 purchased for $250 | 2,250.00 | |
| | | 453,328.59 |
| Deficit as adjusted ($300,000 stock dividend in 1920) | | 279,020.05 |
| Balance | | 170,979.95 |
| Deduct 1920 taxes $23,030.94 prorated | | 9,732.88 |
| Invested capital as adjusted | | 161,247.07 |

Since the respondent makes no distinction between the various component elements of statutory invested capital, this computation is consistent with either his determination or the method stated to have been used by him, and it is not clear which of the two he regards as predominant.

Although much of our doubt is due to inability to determine exactly what action the respondent has taken, it must be recognized that in such a situation it is incumbent upon the petitioner, under the burden of proof resting upon it, to establish the amount of invested capital to which it is entitled. *Berkshire Cotton Manufacturing Co.*, 5 B. T. A. 1231. The pleadings speak of the value of the assets paid in for stock or shares only in terms of the par value of the stock issued therefor and the evidence discloses no sufficient basis for a determina-

tion of value. The Board must render decision on this issue against the petitioner.

The third issue relates to the alleged reduction of invested capital for 1920 and 1921 by computing depreciation upon assets acquired for stock on a basis greater than the amount allowed as value paid in for stock or shares. This is essentially an alternative to the preceding issue, for to the extent that such invested capital is increased, there is an automatic reduction of the alleged excessive amount upon which depreciation was computed.

Again we are handicapped by not knowing exactly what action the respondent has taken. Sufficient evidence has been adduced, however, to enable the Board to direct a computation upon a basis other than that adopted by the respondent. Since we do not have the respondent's computation of the operating deficit for 1920, the action taken by him with respect to that year is not at first apparent. There can be determined, however, the value of property other than cash allowed by the respondent as paid in for stock. The total amount allowable is stated to be $148,000. By deducting from this the cash paid in in the net amount of $26,630, we find that the largest amount allowable as the cost or value of other property paid in for stock is $121,370. Since the factors used in the computation of invested capital for any two successive years are necessarily the same except as to events occurring within the two years, we may properly look to the computation for 1921 to determine that for 1920 the respondent has reduced earned surplus by $258,580, representing depreciation not charged off the books, including $220,600.32 for the period 1913 to 1915 as set up in the revenue agent's report of November 30, 1918. From an examination of the detailed schedule of the $220,600.32 depreciation, it will be found that it has been computed upon a basis which includes the assets paid in for stock, not at $121,370, the amount allowed as invested capital, but at the figure at which the assets were carried on the books—the par value of the stock originally issued therefor.

The error in this respect is similar to reducing invested capital by an amount of depletion in excess of cost, due to the deductions allowable in determining income having been computed upon a March 1, 1913, value in excess of cost. In *Entress Brick Co.*, 9 B. T. A. 588, the Board, in dealing with such a situation, said:

The respondent reduced petitioner's invested capital during the exhaustion of a certain clay bank, by the amount of $9,533.33, which amount equaled the total of the allowances for depletion theretofore made, instead of by the amount of $5,400 which was the actual cost of the exhausted asset. We assume that the discrepancy between the total of the depletion allowances and the cost results from the fact that the March 1, 1913, value of the depleted asset exceeded the

cost. We think the Commissioner's action in this regard is erroneous. In computing invested capital, this asset was, during its existence, properly included at its cost and there is no reason upon its exhaustion for reducing invested capital by more than this amount. In the case of assets acquired prior to March 1, 1913, depletion for invested capital purposes and depletion for the purpose of computing the annual deduction from income may be two totally different things and should never be confused. We take it that the respondent would not contend, if the depletion allowances were less than cost, that the invested capital should be reduced only by the amount of such depletion allowances. This is but another example of fact that the computation of invested capital may not be made to depend entirely upon the theory of the income-tax statutes.

See also *North Iowa Brick & Tile Co.*, 10 B. T. A. 1290; *Inspiration Consolidated Copper Co.*, 11 B. T. A. 1425; *North American Oil Consolidated*, 12 B. T. A. 68; and *Carbo Petroleum Co.*, 12 B. T. A. 166.

The depreciation upon assets other than cash paid in for stock should be recomputed so as to restore to earned surplus all depreciation in excess of that computed upon the amount allowed as invested capital.

The fourth issue relates to the action of the respondent in reducing invested capital for 1920 and 1921 by depreciation sustained during the period from June 30, 1910, to October 21, 1911, when the plant was not in operation. It does not follow from the fact that a plant is not in operation that depreciation is not sustained. Depreciation to some extent usually results from the mere passage of time, regardless of use. It is not inconceivable that on the property in controversy the processes of depreciation were accelerated by nonuse. At best, however, the question is one of fact to be decided from the evidence. In the absence of any proof this issue must be decided for the respondent.

The fifth issue concerns the alleged understatement of invested capital for 1920 and 1921 as a result of adjustments made on account of the purchase by petitioner in 1910 of $2,500 par value of its own stock for $250 cash. It is alleged that the respondent omitted from invested capital for 1920 the entire amount of $2,500, and that for 1921 there has been omitted the excess of the par value over cost, $2,250.

The petitioner apparently assumes that $2,500 should be considered as having been paid in for this stock when originally issued. As has been heretofore observed, there has been no showing that any amount was paid in for stock except as to a small amount of cash, which can not be attributed to these particular shares. The respondent has allowed $148,000 as invested capital for 1920, which represents the par value of stock then oustanding. This is the result of deducting from stock originally issued all stock subsequently retired, which

includes the stock with which we are here concerned. Since respondent has not deducted from the $148,000 the $250 paid out, it follows that his determination is most reasonably construed as a determination that $148,250 was originally paid in, which was subsequently reduced to $148,000 when the cash was paid out for the stock. The petitioner has not shown this to be incorrect, and the burden is upon it to do so.

It appears that the respondent has arrived at the same result in his computation of invested capital for 1921. The computation starts with book surplus which includes a credit of $2,250 on account of the transaction and this amount is eliminated. This issue must be resolved in favor of the respondent for both years.

The sixth issue relates to the action of respondent in excluding from invested capital amounts paid to the petitioner by its stockholders, and for which no stock was issued. These amounts were clearly borrowings and were to be repaid when the petitioner's financial condition permitted. They are clearly borrowed capital within the meaning of section 326 (b), and the action of the respondent in excluding the amounts from invested capital is sustained. *Houston Belt & Terminal Railway Co.*, 6 B. T. A. 1364; *The Peruna Co.*, 11 B. T. A. 1180.

The respondent admits error with respect to the seventh issue relating to failure to include in invested capital any part of $2,000 paid in for stock in 1920. This amount should be included in invested capital for that year for its effective average.

The income and excess-profits taxes for all the years involved should be computed in accordance with this opinion. In the event a further hearing is necessary under Rule 62 (a), these proceedings will be restored to the general calendar.