LAKE CHARLES NAVAL STORES, PETITIONER, *v.* COMMISSIONER OF REVENUE, RESPONDENT.

Docket Nos. 34630, 36940.   Promulgated January 14, 1932.

*John J. Finnorn, Esq.,* for the petitioner.
*James L. Backstrom, Esq.,* and *J. Mills Newton, Esq.,* for the respondent.

**176**

MURDOCK: The Commissioner was obviously in error in including $60,000 in the petitioner's income for 1926 as interest due on notes. The petitioner has proven certain facts in connection with notes of the total face value of $200,000 given by Vizard. It contends that Gillican also gave similar notes and received stock of the face value of $200,000 in connection with the same transaction, but it offered no proof to show that this was true. It argues that there was never any intention that the notes or the interest should be paid, the transaction was a " simulation," and the statute of limitations barred the collection of the notes. If, by simulation, the petitioner implies a lack of *bona fides* or fraud, it is attempting to impeach its own acts and those of its stockholders. We see no lack of *bona fides* or fraud in the transaction. The notes were valid debts due the petitioner until the notes and the stock were canceled. There is nothing to indicate that the makers of the notes would have pleaded the statute of limitations, and the record is not too clear as to whether or not the notes might have been renewed. For all we can see, the petitioner should have accrued in each year the interest on these notes at the rate of 5 per cent. But, even assuming Gillican also gave notes, there was no reason to accrue the interest for three years in one. For the year 1926 the interest would not have amounted to more than $20,000 and the Commissioner was in error in including any greater amount in the petitioner's income for that year. The

proper treatment of this interest for 1924 and 1925 has not been placed in issue, and not knowing the facts, we make no decision concerning it.

The only thing we need to determine in connection with the depreciation issue is whether or not the deduction allowed by the Commissioner in each of the years 1924, 1925 and 1926 was a reasonable one in the light of all the circumstances. The petitioner apparently began business in 1918. For that year the Commissioner allowed the exact amount claimed by the petitioner as a deduction for depreciation. We know that this deduction was computed at the rate of 20 per cent. We do not know why the deduction allowed is not precisely 20 per cent of the total cost of the assets as of December 31, 1918, as stipulated by the parties, but no point is made of this slight discrepancy or of others like it for later years. During the next four years the Commissioner continued to compute and allow depreciation at the rate of 20 per cent. For 1919 he allowed an amount slightly but not greatly in excess of the amount claimed by the petitioner. In 1920 he allowed the amount claimed by the petitioner on these particular assets. But in 1921, when the petitioner's operations resulted in a very large loss, the petitioner claimed a deduction for depreciation amounting to less than $3,000, whereas the Commissioner, still applying his 20 per cent rule, allowed a deduction in excess of $217,000. The amount which he allowed for 1922 was again the exact amount claimed by the petitioner. The petitioner had losses in four of these five years, but in 1919 it had a substantial net income. In 1923 the Commissioner, in order to be consistent in applying the method theretofore used, reduced the total cost of the petitioner's assets as of the end of that year by the cost of assets as of the end of the year 1918. This was proper if the rate was appropriate. The cost of the assets as of December 31, 1918, had been entirely returned to the petitioner through depreciation prior to the year 1923. Any further deduction after 1922, based upon the cost of those assets, would have been improper under the system being used. The Commissioner made a similar adjustment before computing depreciation in each of the years 1924, 1925 and 1926. The petitioner, however, went on claiming deductions upon some basis unknown to us. If its books reflected either the amount of depreciation which it had claimed in prior years or the amount of depreciation which it had been allowed in prior years, the total depreciated cost of its assets as of December 31 in each of the years 1924, 1925 and 1926 would certainly not have been sufficient to justify the amount of depreciation claimed for each of those years.

It seems quite clear from the record that the deductions allowed by the Commissioner for depreciation for 1918, 1919 and 1920 were

correct. They not only correspond approximately with the deductions claimed, but the record does not indicate that anything was known during those years which would have led to the belief that the allowances were not reasonable in amount. The petitioner now contends very strenuously, however, that the petitioner knew in 1921 that its operations would last beyond the 5-year period which was originally estimated. It offered proof to show that by that time some of its designations had been reduced for one reason or another; it was seeking extensions on some of its leases; and it had already obtained additional timber or had been promised additional timber. Its principal contracts were with subsidiaries of the Long-Bel Lumber Company. These leases were not extended beyond the 5-year period until 1923, but the petitioner claims that it knew in 1921 it would get such extensions. The petitioner's so-called " operating vice president," who spent most of his time outside the office, was called as a witness and was asked whether he was able in 1920 to estimate how long the operations would last. He said he thought at that time the company had work for about four more years ahead of it, and in 1921 he thought that the company still had about four more years to operate, due to the fact that it had by that time obtained some additional timber. In 1924, due to the acquisition of some additional timber, he added one year to his prior estimate, and in 1925 he added two or three more years. We do not question the honest intention of this witness in giving his testimony. But opposed to this evidence is the fact that those higher in authority in the company must have thought differently, for in 1920 and also as late as 1922, the petitioner was still claiming depreciation on the old basis of 20 per cent, or approximately that. Also in 1923 it claimed even a larger amount of depreciation than in 1922. In other words, except for the year 1921, when it cut its claim for depreciation to practically nothing for the insufficient reason that it had in that year an enormous loss, we do not find the reduction in its claims for depreciation which we would expect if at that time its officers thought that the life of its assets was going to be longer than they had originally estimated. Furthermore, some of the camps were actually closed after about five years of operation and the useful life of the assets in a particular camp depended a great deal upon the life of the camps. The petitioner never has asked that the assets at the different camps be considered separately for depreciation purposes. On the contrary, it finds no fault with the fact that the Commissioner has applied a composite rate. It merely claims that the rate was too high in the past.

Depreciation for any year should be computed upon the basis of facts known during that year and not upon facts subsequently dis-

covered. *Hamilton Coal Mining Co.*, 17 B. T. A. 1339; *Kehota Mining Co.* v. *Lewellyn*, 28 Fed. (2d) 995; affd., 30 Fed. (2d) 817; certiorari denied, 279 U. S. 864; *Bonwit-Teller Co.* v. *Commissioner*, 53 Fed. (2d) 38. The reasonableness of a deduction for any particular year usually depends to some extent upon what has been done in former years. Here the uniform method applied in former years should not be abandoned in later years, but should be followed in those years unless there is a cogent reason for a change. Cf. *Alpin J. Cameron et al.*, 8 B. T. A. 120; *Lincoln Cotton Mills*, 15 B. T. A. 680. The record does not justify disturbing the determination of the Commissioner in this respect.

But even if we were convinced that the record shows for any of the years 1924, 1925, or 1926 that the deduction allowed was not reasonable in amount, nevertheless no adequate basis has been afforded for the computation of deductions which would be any more reasonable. Cf. *F. G. Bishoff*, 6 B. T. A. 570; affd., 27 Fed. (2d) 91. The computation of a proper deduction for depreciation must be based upon as accurate information as is available. It must be an intelligent estimate, not a mere guess. Some contracts were placed in evidence and also some figures showing a breakdown of the total cost figures for certain years as stipulated into cost of assets used at each camp. But we have no knowledge of other material factors. With the odds and ends of information which are before us we would be unable to make an intelligent estimate for any of the three years of a reasonable allowance for the exhaustion, wear and tear of the property used in the petitioner's business, including a reasonable allowance for obsolescence.

*Judgment will be entered under Rule 50.*