Stanley S. Moore v. Commissioner. Claire E. Moore v. Commissioner.
Stanley S. Moore v. Commissioner
Docket Nos. 31921, 31922.
United States Tax Court
1953 Tax Ct. Memo LEXIS 149; 12 T.C.M. (CCH) 925; T.C.M. (RIA) 53278; August 14, 1953
*149 The evidence discloses, contrary to petitioners' contentions, that the Moore Equipment Company, a community property proprietorship, had not uniformly and consistently applied an annual composite depreciation rate of 25%, based on an estimated four years' useful life of its machinery and equipment, since its organization in 1929, including the taxable years 1944 and 1945. The evidence adduced is likewise insufficient to establish that the rates claimed were reasonable either in the light of the company's experience or as necessary to compensate for extraordinary depreciation resulting from operation under war emergency conditions. Held: The fact that respondent had not questioned the rates used in prior years is not material and petitioners have not sustained the burden of showing that respondent erred in reducing the claimed deductions for depreciation for 1944 and 1945. Further held, petitioners having kept their books of account and filed their federal income tax returns on the accrual basis of accounting, reductions of their 1944 state income taxes as the result of renegotiation proceedings with the United States Navy Department completed in 1945 and deducted from final payment *150 of such state income taxes in 1945 are properly includible in petitioners' federal income tax returns for the year 1945. Clyde C. Sherwood, Esq., and Frank C. Scott, C.P.A., Post Office Box 1904, Stockton, Calif., for the petitioners. Dan S. Morrison, Esq., for the respondent. BRUCE Respondent determined deficiencies in income taxes for the calendar years 1944 and 1945 as follows: 1944
1945
Total
Stanley S. Moore
$15,656.13
$3,419.27
$19,075.40
Claire E. Moore
$13,632.30
$2,202.11
$15,834.41
$34,909.81 Coincident with *151 the determination of such deficiencies respondent disallowed petitioners' claims for refund of income taxes alleged to have been overpaid for the calendar year 1945 in the respective amounts of $6,379.17. The issues presented are: (1) Whether respondent erred in reducing claimed deductions for depreciation for the years 1944 and 1945; (2) Whether respondent erred in disallowing an accrued deduction for state income taxes in 1944, or, as alleged by respondent in the alternative in his amended answer, whether the reduction of petitioners' 1944 California income tax liability resulting from renegotiation proceedings completed in 1945 should have been accrued as income in 1945. A third issue raised was abandoned by petitioners at the hearing. All the facts with respect to the second issue and a portion of the facts with respect to the first issue were stipulated. Findings of Fact All facts stipulated are found and included herein by this reference. Petitioners are husband and wife, residing in Stockton. They filed their returns for the years involved with the collector of internal revenue for the first district of California. On July 14, 1947 each of the petitioners timely filed *152 a claim for refund of income taxes alleged to have been overpaid for the calendar year 1945 in the respective amounts of $6,379.17, "more or less." At all times material to these proceedings petitioners kept their books of account and filed their income tax returns on the accrual basis of accounting. [1]
Issue No. 1. Deduction for Depreciation During the calendar years 1944 and 1945, and at all times material to these proceedings the petitioner was engaged in business under the firm name and style of Moore Equipment Company, which business was a community property proprietorship in which each of the petitioners had a vested community property interest. The Moore Equipment Company was originally formed in 1929 as a partnership in which petitioner and his father were equal partners. In 1940 or 1941 petitioner's father retired and thereafter at all times material to these proceedings, including the years *153 1944 and 1945, the business was carried on by petitioner as a sole proprietorship. The regular business of the Moore Equipment Company for the years 1944 and 1945, and for more than ten years prior thereto, consisted of dealing in new and used farm implements and road machinery, including tractors, motor trucks, bulldozers, power winches, power winch units, scrapers, and similar machinery and equipment; the repairing, servicing, and reconditioning of such merchandise; and the manufacture for sale of farm implements. In such business there was necessarily used certain shop and factory machinery, tools and equipment having a useful life of more than one year. During the years 1942 through 1945, the business of the Moore Equipment Company, in addition to its activities relating to farm and road machinery, included the construction of landing craft and barges for the United States Navy, the rebuilding of jeeps for the United States Army, and some ship repair work. During this period Moore Equipment Company discontinued the construction of new farm and road machinery but its business of repairing, servicing and reconditioning farm and road machinery increased due to the scarcity of such *154 new equipment. In carrying on both its civilian business and its war work the Moore Equipment Company used a large number of pieces of shop and factory machinery, machine tools and equipment, cranes, trucks and other hauling equipment, and also certain office machines, including typewriters. From 1929 to and including the taxable years 1944 and 1945 the Moore Equipment Company computed depreciation on the machines and equipment used in its business in general by applying a depreciation rate of 25% (equivalent to an average four year life expectancy) to depreciable machinery and equipment of whatever nature, including machines, tools, cranes, trucks, hauling equipment, and office machines. It does not appear that the rates used by petitioner for computing depreciation in prior years were ever challenged by respondent. The use of such rate was not, however, uniform. As to at least nine of the items of equipment involved herein which were purchased in 1941 and 1942, a rate of depreciation based upon a shorter useful life was used. A two year rate was used with respect to two "G. M. Diesel Motors" and with respect to a combination of a "G. M. Diesel Motor and 75 K. W. Master Electric *155 Generator Set." A rate based upon a three year useful life was used with respect to two "Lincoln Electric Portable Welders" and four "Harnischfeger Portable Smootharc Electric Welders," whereas a rate based upon four years was used wth respect to other similar G. M. Diesel Motors, G. M. Diesel Motor and 75 K. W. Master Electric Generator sets, and electric welders. In computing its depreciation rates the Moore Equipment Company allowed little or no salvage or scrap value. The depreciation rate used by the Company was fixed by petitioner Stanley S. Moore, without distinction as between various groups of equipment. It does not appear that the rate used was based upon an examination of the equipment or that any factors other than use were taken into consideration. The items in issue are those included in two stipulated lists, one for the year 1944 and one for the year 1945. These lists do not include all the company equipment nor all classes of company equipment. The majority of the items were purchased in 1942 and 1943 and the balance in 1940, 1941, 1944, and 1945. Some of the items were purchased as used equipment. These lists also include a number of items purchased more than four *156 years prior to the taxable years involved, from 1935 to 1939, and which had been fully depreciated prior to the taxable years involved. Such items are not included in those for which depreciation is claimed by petitioners for the years involved but were among the items sold to International Harvester Company as hereinafter detailed. Included in the items involved were nine generators and twelve diesel motors having an aggregate cost of over $41,000; approximately 61 welders having an aggregate cost of over $14,000; miscellaneous building and yard equipment, including 3-ton hoists, acetylene generators, compressors, heat treating furnaces, cranes, etc. having an aggregate cost of over $27,000; and miscellaneous standard machine tools not designed for special usage, including lathes, milling machines, drills, power shears, shapers, key seating machines, etc., having an aggregate cost of over $67,000. Some of the equipment was used in both the company's civilian and its war work. Transportation equipment used in civilian maintenance and service work was used over rough terrain in back woods communities and certain of the tools and equipment employed in such services were often used *157 in sand. Most of the equipment in issue was used in the company's construction division at Stockton, where temperatures were sometimes as high as 115 degrees. As a result of the increased work load resulting from its war contracts the company increased its staff from approximately 250 to 1700 men and operated on a double shift of from 112 to 140 hours a week. Its equipment was thereby subjected to longer hours of usage. It was also subjected to damage and breakage through mishandling by new and inexperienced employees, as well as by overloading and using it for purposes for which it was not specifically designed, in order to meet production schedules. In addition the plant was unable to obtain and keep on such work an adequate number of maintenance men. Normal maintenance was also prevented by reason of a shortage of spare parts, necessitating the manufacture by the company of its own spares, some of them from inferior material, and likewise because production schedules prevented the shutting down of machines so as to allow for periodic inspection and repair. In the income tax returns filed by petitioner for the calendar years 1944 and 1945 the profit from the operations of Moore *158 Equipment Company, Construction Division, was computed in the following manner: 1944
Gross profit
$1,797,809.56
Overhead expenses
962,003.10
Net profit, Construction Division
$ 835,806.46
1945
Gross profit
$1,015,809.71
Overhead costs: Indirect labor
$161,713.64
Supplies and sundry
material
342,298.42
Fixed charges
167,787.68
Miscellaneous
144,997.98
Total overhead costs
816,797.72
Net profit
$ 199,011.99 Included in the above-mentioned "overhead expenses" for the year 1944 and "overhead costs"for the year 1945 were deductions in the respective amounts of $25,504.85 and $29,205.13 representing depreciation claimed on certain machinery and equipment employed in the Construction Division of Moore Equipment Company. Rejecting petitioner's general use of a four-year life for the items in question, the Commissioner assigned a life expectancy varying from five to fifteen years: ten years to welders, ten years to diesel motors and motor-generator sets, twelve to fifteen years to generators alone, five to fifteen years to machine tools, six to fifteen years to building and yard equipment, and twenty years to an overhead electric *159 crane. He thereby reduced the amount of depreciation currently deductible for the years 1944 and 1945 from $25,504.85 and $29,205.13, respectively, to $7,429.70 and $9,101.16, respectively, thus restoring $18,075.15 and $20,103.97, respectively to income from business for the years 1944 and 1945. A community share of 46.545% was allocated to the petitioner-wife and the balance to petitioner-husband. The total cost of the equipment in issue, depreciation allowed in prior years, remaining cost, depreciation determined to be allowable by respondent and depreciation claimed in each of the taxable years was as follows: Depreciation
Allowed or
Allowable
Depreciation
Depreciation
Original Cost
Prior Years
Remaining Cost
Allowable
Claimed
1944
$124,012.21
$29,950.24
$ 94,062.07
$7,429.70
$25,504.85
1945
136,328.15
28,163.32
108,164.83
9,101.16
29,205.13
Respondent's estimates of the useful life of the items in issue were based upon examination by an experienced engineer revenue agent in 1948 of a part of the items which were available, otherwise upon a description of the equipment, and took into consideration factors which *160 would accelerate depreciation, including conditions under which the work was being performed, place of performance, number of shifts and hours of operation. On February 15, 1944 the Moore Equipment Company sold its plant as a going concern to the International Harvester Company. Most of the items in issue, including machine tools, welders, building machinery and equipment, were included in the sale to International Harvester Company, but not all the items sold to International Harvester Company are involved in these proceedings. The items in issue which were included in the sale to International Harvester Company were carried on the books of the Moore Equipment Company at a depreciated cost of $52,131.56 and were sold to the International Harvester Company for $169,166. Many of the machine tools and equipment were in useable condition at the time of sale and with normal maintenance and repairs were still being used by the International Harvester Company in the manufacture of farm equipment in 1952. The power plant, including generators, diesel motors, and motor-generator sets, were operated by the International Harvester Company upon a loan basis from the time of purchase for some *161 three to six months until the latter company was able to obtain electric power from a public utility. The remainder of the items in issue were sold to various purchasers or retained by the company and later sold or transferred to the Moore Equipment Company, Inc. Some of those retained by the company were still in operation in 1952. Issue No. 2. Deduction for State Income Tax For the calendar year 1944 the petitioners' net income, including income from the Moore Equipment Company, was subject to an income tax levied by the State of California according to the provisions of the California Personal Income Tax Act (Stats. 1935, p. 1090), as amended. On or before the 15th day of April, 1945, the petitioners duly and timely filed with the Franchise Tax Commissioner for the State of California their California individual income tax returns for the calendar year 1944, on that Commissioner's Form 540, showing in such detail as the form and the Commissioner's regulations required the amounts of net income and income tax liability, as follows: Income Tax
Net Income
Liability
Stanley S. Moore
$468,058.90
$32,777.53
Claire E. Moore
493,913.94
28,634.84 The *162 above stated amounts of tax were duly and regularly assessed on those returns. The petitioners, on December 3, 1945, duly filed amended State of California individual income tax returns for the calendar year 1944, which recomputed the California income tax liabilities on the basis of renegotiation proceedings with the United States Navy Department which had been completed on or about October 1, 1945. On December 3, 1945, the petitioners, having each paid two-thirds of the State of California income tax shown as due on their individual returns, leaving a balance of one-third of such amounts still due, then paid only the smaller balance of tax still due according to their amended returns then filed. Thereafter, on December 30, 1946, the California Commissioner issued and executed his Form 608, "Statements of Cancellation, Credit or Refund of Personal Income Tax," by which the prior assessments were reduced $6,923.31 on the return of the petitioner husband, and $6,028.36 on the return of the petitioner wife. These statements were received by the petitioners after the date of their issue and before January 17, 1947. On their 1944 Federal income tax returns the petitioner husband and *163 petitioner wife deducted as accrued California State income tax liabilities the amounts of $32,777.53 and $28,634.84, respectively. The above-mentioned cancellations or credits of California income taxes have not been included in taxable income of the petitioners for any taxable year. Opinion BRUCE, Judge: First Issue. Respondent reduced petitioners' claimed deductions for depreciation of machinery and equipment used in the business of the Moore Equipment Company, a community property proprietorship, from $25,504.85 to $18,075.15 for the calendar year 1944 and from $29,205.13 to $20,103.97 for the calendar year 1945. In explanation of such adjustments, in the statement attached to the deficiency notices, respondent stated that in computing depreciation petitioners had "failed to take into account the salvage value of the depreciable assets" and that they had "understated the estimated useful life of the assets." Sec. 23 (1), Internal Revenue Code; Reg. 111, sec. 29.23 (1)-1,-5,-9. Petitioners do not question the right of the Commissioner to alter the rate of depreciation when the facts warrant him in so doing (see Harry Sherin, 13 T.C. 221; *164 Lincoln Cotton Mills, 15 B.T.A. 680; Big Four Oil & Gas Co. v. Commissioner, 83 Fed. (2d) 891, affg. 28 B.T.A. 61, but base their argument that the Commissioner erred in reducing the depreciation claimed herein on the grounds (1) that he has acquiesced in petitioners' use of an annual composite rate of 25%, based upon an estimated four years useful life, consistently followed by it since its organization in 1929, (2) that petitioners' use of such method has been proven accurate by the experience of the Moore Equipment Company, and (3) that the use of such a composite rate was necessary to compensate for the extraordinary depreciation sustained as a result of its operation under war emergency conditions. Petitioners rely heavily upon Estate of Clarence B. Eaton, 10 T.C. 869, and Lake Charles Naval Stores, 25 B.T.A. 173. In the Eaton case, in computing deductions for depreciation on items of machinery and motor vehicles in each of the taxable years a partnership, engaged generally in heavy construction work, followed its established practice of prior years, which had theretofore been acquiesced in by the Commissioner, *165 in assigning a four-year useful life to new equipment and a two-year useful life to equipment acquired in a used condition. The Commissioner, though he had accepted it for preceding tax determinations, rejected petitioners' composite rate as inaccurate and determined a useful life for each item. We held that the Commissioner erred in disallowing any part of the depreciation claimed, stating: "From the evidence adduced we are unable to accept the determined changes. The partnership accounting method, fortified by experience with use of equipment, is not to be lightly set aside." In the Lake Charles Naval Stores case, quoted in the Eaton case, we said: "The reasonableness of a deduction for any particular year depends to some extent upon what has been done in former years. Ordinarily the uniform methods applied in former years should not be abandoned in later years, but should be followed in those years unless there is a cogent reason for a change." Also to be considered, in view of the fact that the Commissioner has apparently not reduced the claimed depreciation on all of petitioners' equipment but only on a certain number of items, is the rule announced in Union Company, 14 B.T.A., 1310, 1313, *166 wherein it is stated: "* * * In attacking a composite rate of depreciation it is not sufficient that the petitioner may be able to pick out certain parts and prove that if such parts were considered separately a greater depreciation rate should be allowed. The composite rate is based upon an average life for all of the parts and until error in the average is shown there is no basis upon which it can be said that the amount allowed is not reasonable." See also Southern California Freight Lines, Ltd., 36 B.T.A. 328, affd. 99 Fed. (2d) 104, cert. denied 306 U.S. 632; Southland Coal Co., 16 B.T.A. 50. Certainly it would be no more proper for the Commissioner to alter a composite rate uniformly used by picking out a portion of the items having a longer useful life than the average, than it would be for the petitioner to pick out items having a greater depreciation rate. In the light of the above decisions we would feel compelled to hold that the Commissioner erred in reducing the claimed deductions for depreciation for the taxable years involved herein if the facts were as asserted by petitioners. A careful examination of the record *167 herein, particularly the equipment record sheets maintained by the Moore Equipment Company for each item of equipment, a number of which were introduced in evidence, convinces us, however, that the Moore Equipment Company has not, either in the years involved or in the preceeding years, applied a uniform composite rate of depreciation to all its equipment. As pointed out in our findings of fact, as to at least nine of the items of equipment involved herein, which were purchased in 1941 and 1942, a rate of depreciation based upon a shorter useful life than that used for other similar items was used. Since the equipment record sheets for all of the company's equipment, or even for all the items involved herein, were not introduced in evidence we are unable to determine as to how many other items there may have been a variance. No mention of any of these variances was made by any of the witnesses, and so far as we are able to ascertain the record contains no explanation for such differences. Nor are they explained in briefs. The principles mentioned in the cases cited are accordingly not applicable and the fact that deductions taken for depreciation in former years have not been questioned *168 by the Commissioner is not material. While our conclusion regarding the use of a four year composite rate might be taken as determinative of the issue presented, since petitioners have not sought an acceleration of the rates previously used but only point to their experience and the conditions under which they operated as justification for use of a four year composite rate, we nevertheless consider whether such rates as were used may not have been reasonable in the light of their experience and such conditions. As stated in Lake Charles Naval Stores, supra: "The computation of a proper deduction for depreciation must be based upon as accurate information as is available. It must be an intelligent estimate, not a mere guess." See also Copifyer Lithograph Corp., 12 T.C. 728. The burden of proof rests upon the petitioners to sustain the deductions claimed. They must affirmatively establish the reasonableness of the deductions through proof of the correct ultimate facts which require the allowance full and complete information with respect to the cost or other basis of the assets in respect of which depreciation is claimed, their age, condition, remaining *169 useful life, and the portion of their cost or other basis which has been recovered through depreciation allowance for prior taxable years. It is not enough that they indicate a weakness in respondent's method of determining the profit or allowance for depreciation and obsolescence. Reg. 111, sec. 29.23(1)-5; Uncasville Manufacturing Co., 19 B.T.A. 920, reversed on other issues 55 Fed. (2d) 893, cert. den. 286 U.S. 45. See also Reg. 111, sec. 29.23(1)-9, which provides that: "* * * depreciation shall be recorded on the taxpayer's books, * * *. The allowances shall be computed and recorded with express reference to specific items, units, or groups of property, each item or unit being considered separately or specifically included in a group with others to which the same factors apply." We have carefully considered the testimony of petitioner as well as of the other witnesses and are satisfied that petitioners have not established by affirmative evidence the reasonableness of the deductions claimed. Without undertaking a detailed recital of all the testimony it is sufficient to point out that such testimony was too piecemeal, vague, and uncertain, *170 consisted of generalities, somewhat exaggerated conclusions, and in a number of instances is contradicted by other established facts. For example, in testifying concerning electric welders, diesel motors and generators, petitioners did not testify as to the specific items but referred to them in groups and in general terms without distinction as to age, condition, size, make, or whether purchased new or in used condition. The extent and character of repairs, maintenance and replacements was referred to only in general terms. No evidence of the cost of repairs was shown, petitioner himself being uncertain whether records were consistently and properly kept on such expenditures. Petitioner did not show what the estimated useful life of the equipment was under normal conditions or that the equipment was examined to determine its condition at the end of the periods involved. His testimony that much of the machinery was "shot", "wrecked", "wrung out" or became "junk" prior to 1946, was hyperbole. Such opinions without showing of the ultimate facts are not sufficient. H. E. Harman Coal Corp., 16 T.C. 787, 803. Moreover they are contradicted by evidence that in February 1947, *171 and at the time of the hearing in 1952, many of the items involved were in operating condition and still being used. It is also obvious from such equipment record sheets as were put in evidence that notwithstanding petitioner's testimony that salvage values were taken into account, little or no allowances were in fact made for salvage values. The salvage or scrap values stated thereon were no more than the odd cents left over after deducting the monthly depreciation for the period indicated. Moreover, while it is recognized that mere appreciation in value due to extraneous causes has no influence on the depreciation allowance, one way or the other (see Even Realty Co., 1 B.T.A. 355; Max Eichenberg, 16 B.T.A. 1368; Wier Long Leaf Lumber Co., 9 T.C. 990, reversed on other issues 173 Fed. (2d) 549, where as here prices greatly in excess of the remaining depreciated values are received, such fact may be considered with other factors in determining whether there has been an understatement as to the estimated useful life of the items involved. Cf. Wier Long Leaf Lumber Co., supra. While petitioner explained the high prices *172 received from International Harvester Company as due to the sale being of a going concern, such explanation is weakened by the fact that many of the items were still being used as late as 1952. Such explanation would also not apply to the sale of other items, such as electric welders, to other parties for substantial sums and in the face of a flooded market following the termination of the war. Much of what has been said above is also applicable to petitioners' claim that the deductions claimed were justified on the basis of accelerated depreciation due to war time operating conditions. Respondent concedes that because of some of these factors the estimated useful life of the equipment was reduced below normal. Petitioners, however, have not shown what the estimated useful life of the equipment was under normal conditions, or to what extent such abnormal conditions actually resulted in shortening the remaining useful life or that the equipment was examined at the end of the periods involved for such purposes. Accordingly petitioners have not carried their burden of showing the reasonableness of the rates claimed on the basis of accelerated depreciation. Cf. Copifyer Lithograph Co., supra; *173 Harry Sherin, supra.On the other hand, as testified by respondent's engineer agent, and as shown by comparison with Bulletin "F" (Revised January 1942) Bureau of Internal Revenue, the rates upon the basis of which the deficiencies herein were determined by respondent, were not the rates that would be expected for normal use, but took into consideration the factors of accelerated depreciation. After careful consideration of all of the evidence herein, we are of the opinion that petitioners have not sustained their burden of showing that the respondent erred in reducing the claimed deductions for depreciation for the calendar years 1944 and 1945. Therefore, his action in this respect will not be disturbed. Second Issue. In the notices of deficiency respondent, for the taxable year 1944, decreased deductions for accrued California State income taxes, explaining that the decrease represented the tax accrued on the amount by which business income was decreased by renegotiation proceedings. In amended answers respondent alleged in the alternative that if he had erred in his notices of deficiency in this respect, he also had "erred in failing to include in petitioners' *174 income for the year 1945 the amount of refund of State of California individual income taxes which accrued in that year as a result of renegotiation proceedings completed in that year." Respondent on brief admitted that he had erred in decreasing petitioners' deductions for accrued California income tax for the year 1944 if the renogotiation proceedings were not completed until 1945. It was stipulated that the renegotiation proceedings with the United States Navy Department had been completed on or about October 1, 1945. Accordingly it was not proper thus to adjust petitioners' 1944 income since, under the decision of this Court in Taylor Instrument Companies, 14 T.C. 388, petitioners were then liable for the California income taxes. The question remaining therefore is whether the reduction of petitioners' 1944 California income tax liability resulting from renegotiation proceedings with the United States Navy Department completed in 1945 were accruable in 1945 as respondent contends, or in some later year as petitioners contend. Section 42 (a) of the Internal Revenue Code applicable herein is set forth in the margin. [2]
*175 We are of the opinion that the reductions of the petitioners' state income taxes resulting from the renegotiation proceedings which were completed in 1945, should be included as income in 1945. In H. O. Boehme, Inc., 15 T.C. 247, where similar questions relating to refunds of New York State franchise taxes were involved, we stated: "It is now well established that if at the close of the taxable year an accrual basis taxpayer has all of the basic data or facts from which he may within reasonable limits determine an amount which he has a fixed right to receive, such amount is accruable. Continental Tie & Lumber Co. v. United States, 286 U.S. 290; United States v. Anderson, 269 U.S. 422; Security Flour Mills Co. v. Commissioner, supra; Uncasville Mfg. Co. v. Commissioner, 55 Fed. (2d) 893; ACF-Brill Motors Co., 14 T.C. 263. "This is true whether the amount in question is a credit to be applied in abatement of taxes owed for any year or a refund. See Hurd Millwork Corporation, 44 B.T.A. 786." The renegotiation proceedings in connection with petitioner's contract business with the United States Navy *176 Department were completed on or about October 1, 1945 and, on December 3, 1945, petitioners filed amended State of California individual income tax returns for the calendar year 1944 recomputing their California income tax liability on the basis of the renegotiation proceedings which had been completed. See Cal. Rev. & Tax. Code, secs. 17321, 17322.9. At that time petitioners had each paid two thirds of the State of California income tax shown as due on their original returns leaving a balance of one third of such amounts still due. They thereupon paid only the smaller balance of tax still due according to their amended returns. It thus appears that by the end of 1945 petitioners knew all of the factors necessary to the determination of the credits to which they were entitled after renegotiation. With respect to the adjustments resulting from renegotiation, insofar as the record discloses, there does not appear to have been any contest or basis for contest with the state authorities of the amount of tax thus paid. There was not any "overpayment" of their state income tax and petitioner's contentions with respect to procedures under California law for "credit or refund" when there *177 has been an "over-payment" of tax are accordingly not apposite. Although there is discussion on brief of the necessity for approval by the State Board of Control, there is nothing to indicate that what petitioners themselves considered to be formal approval by the State Board of Control would not follow in due course. Petitioners' deductions in 1945 of the amounts by which their state income tax liabilities were reduced by reason of the renegotiation proceedings, from the third payment made on said taxes, are inconsistent with their position herein that formal approval of the Board was required to make the credits accruable. By taking the credits in 1945 they accrued such amounts as effectively as they had previously accrued the liability for the year 1944. Being on an accrual basis the amounts represented by such credits are properly includible in petitioner's income tax returns for the year 1945. H. O. Boehme, Inc., supra; Kenyon Instrument Co., 16 T.C. 732. Decisions will be entered under Rule 50. Footnotes
1. All reference to petitioner hereafter is with respect to the husband, Stanley S. Moore, unless otherwise indicated. The petitioner wife is involved herein solely because of her community property interest in the Moore Equipment Company, hereinafter referred to as the Company.↩
2. SEC. 42. PERIOD IN WHICH ITEMS OF GROSS INCOME INCLUDED. (a) General Rule. - The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. * * *↩