Mr. Justice CURTIS
 

 delivered the opinion of the court.
 

 This is a writ of error to the Circuit Court of the United States for the southern district of Alabama, in an action of debt, founded on an official bond of Oliver S. Beers, as deputy postmaster at Mobile, the defendant being one of his- sureties.
 

 It appeared, on the trial in the Circuit Court, that Beers was appointed to that office by the President of the United States, during the recess of the Senate, and received a commission, hearing date in April, 1849, to continue in force until the end of the next session of the Senate, which terminated on the thirtieth day of September, 1850. ■
 

 It also appeared, that in April, 1850, Beers was nominated by the President to the Senate, as deputy postmaster at Mobile; and the nomination having been duly confirmed, a commission was made out and signed by President Taylor, hearing date on the twenty-second day of April, 1850; hut it had not been transmitted to Beers on the first day of July, 1850, when the bond declared on hears date. Beers took charge of the post office at Mobile before his second appointment, and continued to act, without intermission, until he was removed from office in February, 1853. The default, assigned as a breach of the bond, was admitted to have occurred under his second appointment; and the principal question upon this writ of error is, whether the bond declared on secures the faithful performance of the duties of the office under the first or under the second appointment.
 

 The condition of the bond recites: “Whereas the said Oliver S. Beers is' deputy postmaster at Mobile aforesaid,” &c.
 

 The first inquiry is, to what date is this recital to be referred? The district judge, who presided at the trial, ruled that it referred to the office held by Beers when the bond was signed. The delivery of a deed is presumed to have been made on the day of its date. But -this presumption may be removed by •evidence that it was delivered on some subsequent day; and when á delivery on some subsequent day is shown, the deed speaks on that subsequent day, and not on the day of its date. •
 

 In Clayton’s case, (5 Co., 1,) a lease, bearing date on the 26th of May, to.hold for three years “from henceforth?” was'
 
 *76
 
 delivered on the 20th of. June. It was resolved, that “from henceforth” should he accounted from the day of delivery of . the indentures, and not from the day of their date; for the words of an indenture are not of any effect until delivery—
 
 traditio loqui faeii okarlam.
 

 So in Ozkey
 
 v.
 
 Hicks, Cro. Jac., 263, by a charter-party, under seal, bearing date on the.8th of September, it was agreed that the defendant should pay for a moiety of the corn which then was, or afterwards .should be, laden on board a certain vessel. The defendant pleaded'that the deed was not delivered until the 28th of October, and that on and after that day there was no corn on board; and on demurrer, it was held a good plea, because the word
 
 then
 
 was to be referred to the time of the delivery of the deed, and not to its date.
 

 And the modern case of Steele
 
 v.
 
 March, 4 B. and C., 272, is to the same point. A lease purported on its face to have been made on the -25th of March, 1783, habendum from the 26th of March
 
 now
 
 last past. It was proved that the. delivejy was made after the day of the date, and the Court of King’s Bench held that the word
 
 now
 
 referred to the time of delivery, and not to the date of the indenture.
 

 At the trial in the Circuit Court, it appeared that on the day after the date of the bond, Beers, in obedience to instructions from the Postmaster General, deposited it, together with a certificate of his oath of office under his last appointment, ■in the mail, addressed to the Postmaster General at Washington,
 

 In Broome
 
 v.
 
 The United States, 15 How., 143, it was held that a collector’s bond might be deemed to be delivered when it was put in a course of transmisson to the Comptroller of the Treasury,-whose duty it is to examine and approve or reject such bonds. But this decision proceeded upon the ground that the act of Congress requiring these bonds, and' their approval, had allowed the collectpr to exercise his office for three months without a bond; and that consequently the approval and delivery were not necessarily simultaneous acts, nor need the approval precede the delivery; and the distinction between bonds of collectors and those of postmasters is there adverted to. The former may take' and hold office for three month» without a bond. The latter must give bond, with approved security, on their appointment.; and there is no time allowed' them, after entering on. their offices, to comply with this requirement. The bond must therefore be accepted by the Postmaster General, as sufficient in point of amount aiid security, before it can have any effect as a contract. Otherwise^ the postmaster ¿fight enter on the office merely on giving
 
 *77
 
 a bond, which, on its presentation, the Postmaster General might reject as insufficient.
 

 • In other words, the person appointed might act without any operative bond, which, we think, was not intended by Congress. It is like the case of Bruce et al.
 
 v.
 
 The State of Maryland, 11 Gill and John., 382, where it was held.that the bond of a sheriff took effect only when' approved by the county court; because it was only 'on such approval that the sheriff was authorized to act.
 

 The purpose of the obligee was to become security for one legally authorized to exercise the office; not for one who enters on it unlawfully, because he failed to comply with the requirement to furnish an approved bond; and this purpose can be accomplished only by holding that the appointee cannot act, and the bond cannot take effect, until it is approved. Our opinion is, therefore, that this bond speaks only from the time when it reached the Postmaster General, and was accepted by him; that until that time it was only an offer, or proposal of an obligation, which became complete and effectual by acceptance ; and that, unlike the case of a collector’s bond, which is not a condition precedent to his taking office; and which may be intended to have-a retrospective operation, the bond of a postmaster, given on his appointment, cannot be intended to relate back to any earlier date than the time of its acceptance, because it is only after its acceptance that there can be any such holding of the office as the bond was meant to apply to.
 

 Row, at the time when this bond was accepted by the Postmaster ..General, Beers had been nominated and confirmed as deputy postmaster; he had given bond in such a penalty, and with such security, as was satisfactory to the Postmaster General ; he had taken the oath of office, and there was evidence that a certificate theréof had been filed in the General Post Office.
 

 . Upon this state of facts, we are of opinion that at that time his holding under the first appointment had .been superseded •by his holding under the second appointment; and when the bond says, “is now postmaster,” it refers to such holding under the second appointment, and is a security for the - faithful discharge of his duties under the second appointment.
 

 It was suggested at the argument, that this bond was not, in point of fact, taken in reference to the new appointment, but was a new bond, called for- by the Postmaster General under the authority conferred on him by the act of July 2, 1836. 5 Stat. at Large, 88, sec. 37.
 

 Td this there are several answers. Ro such ground appears to have been taken at the trial, and the rulings of the court,
 
 *78
 
 which were excepted to by the plaintffs in error, precluded any such inquiry. These rulings were, that'the Holding to which the bond referred was a holding on the first day of July, and that Beers was in office ón that day under the first appointment, and not under the second. This put an end to the claim, and rendered a verdict for the defendant inevitable.
 

 But if this were otherwise, parol or extraneous evidence that the bond was not intended to apply to the holding under the second appointment, because it was a new bond taken to supersede an old one, would he open to the objections which the defendants in. error have so strenuously urged.
 

 There is no ambiguity in the bond. It refers to a holding at some particular date. . The law determines that date to he the time when the bond took effect. Nothing remain's hut to determine upon the facts, under which appointment Beers then held; this also the law settles, and when it has thus been ascertained that he then held under the second appointment, evi- ■ dence to show that the bond was not intended to apply to that appointment would directly contradict the bond, for it would show it was not intended to apply to the appointment which Beers then held, while the bond declares it was so intended. The defendant in error further insists, that Beers was not in office, under the second appointment, at the time this bond took effect, because the commission sent to him was signed by President Taylor, and was not transmitted until after his death. '
 

 When a person has been nominated to an office by the President, confirmed by the Senate, and his commission has been signed by the President, and the seal of the United States affixed thereto, his appointment to that office is complete. Congress may provide, as it has done in this case, that certain acts shall be done by the appointee before he shall enter on the possession of the office under his appointment. These acts then become conditions precedent to the complete investiture of the office; but they are to be performed by the. appointee, not by the Executive; all that the Executive can do to invest the person with his office has been completed when the commission has been signed and sealed; and when the person has perfomi-ed the required conditions, his title to'enter on the possession of the office is also complete.
 

 The transmission of the commission to the officer is not essential to his investiture of the office. If, by any inadvertence or accident, it should fail to reach him, his possession of the office is as lawful as if it were, in his custody. It is but evidence of those acts of appointment and qualification which constitute his title, and which may be proved by other evi-
 
 *79
 
 deuce, where the rule of law requiring the best evidence does. not prevent.
 

 It follows from these premises, that when, the commission of a postmaster has been signed and sealed, and placed in the hands of the Postmaster General to be transmitted to the officer, so. far as the execution is concerned, it is a completed act.. The officer has then been commissioned by the President pur-1 suant to the -Constitution; and' the subsequent death of the President, by-whom nothing remained to-be done, can have no effect on that completed act. It is of no importance that the person commissioned must give a bond and take an oath, before he possesses the office under the - commission; nor that it is the duty of the Postmaster. General to transmit the commission to the officer when he shall- have done so. These are acts of third persons. - The President has- previously acted to the full extent which he is required or enabled by the Constitution and laws to act in appointing and eommissioning.the officer; and to the benefit of that complete action the officer is entitled, when he fulfils the conditions on his part, -imposed by law.
 

 We are of opinion, therefore, that Beers was., duly c'ommis-sioned uhder his second appointment.
 

 .Eor these reasons, we hold the judgment of the Circuit Court to-have been erroneous, and it must-be reversed, and the-cause remanded with directions to -award a
 
 venire facias de novo. ..
 

 Teh United States; -Plaintiffs in .Error, "|
 
 In error to the Circuit Court of'the TJni-v. j-.ted States for the southern district of
 
 - ' George N. Stewart. J-
 
 Alabama.
 
 ’ _
 

 Mr. Justice CURTIS.
 

 The. opinion of the court, ifrthé preceding case, determines ‘ this, and the judgment-of the Circuit Court must be reversed,, .in conformity with that opinion.