UNITED STATES *v.* GEORGE OTIS SMITH.

No. 694. Argued March 21, 22, 1932.—Decided May 2, 1932.

*Mr. John W. Davis,* with whom *Mr. Alexander J. Groesbeck* was on the brief, for the United States Senate.

8

12

14

*Attorney General Mitchell,* with whom *Solicitor General Thacher,* and *Mr. Erwin N. Griswold* were on the brief, as *amici curiae* by leave of Court.

16

18

*Mr. George Wharton Pepper* for Smith.

20

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This petition, in the name of the United States, for a writ of *quo warranto* was filed in the Supreme Court of the District of Columbia, on relation of the district attorney, in deference to the desire of the United States Senate to have presented for judicial decision the question whether George Otis Smith holds lawfully the office of member and chairman of the Federal Power Commission. The case was heard upon the petition and answer. On December 22, 1931, the trial court entered judgment denying the petition. An appeal was promptly taken to the Court of Appeals of the District. That court

certified a question pursuant to § 239 of the Judicial Code. This Court granted joint motions of the parties to bring up the entire record and to advance the cause.

On December 3, 1930, the President of the United States transmitted to the Senate the nomination of George Otis Smith to be a member of the Federal Power Commission for a term expiring June 22, 1935. On December 20, 1930, the Senate, in open executive session, by a vote of 38 to 22, with 35 Senators not voting, advised and consented to the appointment of Smith to the office for which he had been nominated. On the same day, the Senate ordered that the resolution of confirmation be forwarded to the President.[1] This order was entered late in the evening of Saturday, December 20th; and still later on the same day the Senate adjourned to January 5, 1931. On Monday, December 22, 1930, the Secretary of the Senate notified the President of the United States of the resolution of confirmation, the communication being delivered by the official messenger of the Senate.[2] Subsequently,

---

[1] The terms of the resolution were: " *Resolved,* That the Senate advise and consent to the appointment of the above named person to the office named agreeably to his said nomination." Upon the announcement of the vote, the President *pro tempore* stated: " The Senate advises and consents to the nomination and the President will be notified." No objection being made, or further proceedings having been had, in the Senate with reference to said consent or the notification thereof, the following order was entered by the Secretary of the Senate in usual course upon the Executive Journal of the Senate for December 20, 1930: " *Ordered,* that the foregoing resolution of confirmation be forwarded to the President of the United States."

Further action being had in Executive Session on the same day with reference to other nominations, there was entered on the Journal for December 20, 1930: " *Ordered,* that the foregoing resolution of confirmation this day agreed to be forwarded forthwith to the President of the United States."

[2] The terms of the communication were: " In executive session, Senate of the United States, Saturday, December 20, 1930. *Resolved,*

and on the same day, the President signed and, through the Department of State, delivered to Smith a commission purporting to appoint him a member of the Federal Power Commission and designating him as chairman thereof. Smith then, on the same day, took the oath of office and undertook forthwith to discharge the duties of a commissioner.

On January 5, 1931, which was the next day of actual executive session of the Senate after the date of confirmation, a motion to reconsider the nomination of Smith was duly made by a Senator who had voted to confirm it, and also a motion to request the President to return the resolution of confirmation which had passed into his possession. Both motions were adopted and the President was notified in due course. On January 10, 1931, the President informed the Senate by a message in writing that he had theretofore appointed Smith to the office in question, after receiving formal notice of confirmation, and that, for this reason, he refused to accede to the Senate's request.[3]

---

that the Senate advise and consent to the appointment of the following-named persons to the offices named agreeably to their respective nominations:

Federal Power Commission

George Otis Smith, to be a member for the term expiring June 22, 1935.

Frank R. McNinch, to be a member for the term expiring June 22, 1934.

Marcel Garsaud, to be a member for the term expiring June 22, 1932.
Attest:                                (Signed)   EDWIN P. THAYER,
*Secretary.*"

[3] The message of the President read as follows:

*To the Senate of the United States:*

I am in receipt of the resolution of the Senate dated January 5, 1931—

" That the President of the United States be respectfully requested to return to the Senate the resolution advising and consenting to the

Thereafter, a motion was made and adopted in the Senate directing the Executive Clerk to place on the Executive Calendar the "name and nomination of the said George Otis Smith." Subsequently, on February 4, 1931, the President *pro tempore* of the Senate put to the Senate the question of advice and consent to the appointment of Smith, and a majority of the Senators voted in the negative. Notification of this action was sent to the President. On the following day, February 5, 1931, the Senate by resolution requested the district attorney of the District of Columbia to institute in its Supreme Court proceedings in *quo warranto* to test Smith's right to hold office; and,

---

appointment of George Otis Smith to be a member of the Federal Power Commission, which was agreed to on Saturday, December 20, 1930."

I have similar resolutions in respect to the appointment of Messrs. Claude L. Draper and Col. Marcel Garsaud.

On December 20, 1930, I received the usual attested resolution of the Senate, signed by the Secretary of the Senate, as follows:

"*Resolved*, That the Senate advise and consent to the appointment of the following-named person to the office named agreeably to his nomination:

Federal Power Commission

George Otis Smith, to be a member of the Federal Power Commission."

I have similar resolutions in respect to Colonel Garsaud and Mr. Draper.

I am advised that these appointments were constitutionally made, with the consent of the Senate formally communicated to me, and that the return of the documents by me and reconsideration by the Senate would be ineffective to disturb the appointees in their offices. I cannot admit the power in the Senate to encroach upon the Executive functions by removal of a duly appointed executive officer under the guise of reconsideration of his nomination.

I regret that I must refuse to accede to the requests.

HERBERT HOOVER.

The White House, January 10, 1931.

pursuant to that request, this proceeding was filed on May 4, 1931. As the officials of the Department of Justice were committed by an opinion of the Attorney General (36 Op. Atty. Gen. 382) to a conclusion adverse to the position taken by the Senate, consent to the institution of the proceeding was conditioned upon the Senate's employing its own counsel and upon the understanding that officials of the Department of Justice would not support the petitioner.

No fact is in dispute. The sole question presented is one of law. Did the Senate have the power, on the next day of executive session, to reconsider its vote advising and consenting to the appointment of George Otis Smith, although meanwhile, pursuant to its order, the resolution of consent had been communicated to the President, and thereupon, the commission had issued, Smith had taken the oath of office and had entered upon the discharge of his duties? The answer to this question depends primarily upon the applicable Senate rules. These rules are numbers XXXVIII and XXXIX.[4] The pivotal provisions are paragraphs 3 and 4 of Rule XXXVIII, which read:

" 3. When a nomination is confirmed or rejected, any Senator voting in the majority may move for a reconsideration on the same day on which the vote was taken, or on either of the next two days of actual executive session of

---

[4] Rule XXXIX provides: " The President of the United States shall, from time to time, be furnished with an authenticated transcript of the executive records of the Senate, but no further extract from the Executive Journal shall be furnished by the Secretary, except by special order of the Senate; and no paper except original treaties transmitted to the Senate by the President of the United States, and finally acted upon by the Senate, shall be delivered from the office of the Secretary without an order of the Senate for that purpose." The transcript of executive records relating to action by the Senate on nominations, furnished to the President under this rule, appears to consist only of copies of resolutions of confirmation or rejection.

the Senate; but if a notification of the confirmation or rejection of a nomination shall have been sent to the President before the expiration of the time within which a motion to reconsider may be made, the motion to reconsider shall be accompanied by a motion to request the President to return such notification to the Senate. Any motion to reconsider the vote on a nomination may be laid on the table without prejudice to the nomination, and shall be a final disposition of such motion."

" 4. Nominations confirmed or rejected by the Senate shall not be returned by the Secretary to the President until the expiration of the time limited for making a motion to reconsider the same, or while a motion to reconsider is pending, unless otherwise ordered by the Senate."

The contention on behalf of the Senate is that it did not advise and consent to the appointment of George Otis Smith to the office of member of the Federal Power Commission, because, by action duly and regularly taken upon reconsideration in accordance with its Standing Rules, it refused such consent, and gave to the President formal notice of its refusal.

The argument is that the action of the Senate in assenting to the nomination of Smith on December 20, 1930, and ordering that the President be notified, was taken subject to its rules and had only the effect provided for by them; that the rules empowered the Senate, in plain and unambiguous terms, to entertain, at any time prior to the expiration of the next two days of actual executive session, a motion to reconsider its vote advising and consenting to the appointment, although it had previously ordered a copy of the resolution of consent to be forwarded forthwith to the President; that the Senate's action can not be held to be final so long as it retained the right to reconsider; that the Senate did not by its order of notification waive its right to reconsider or intend that the President should forthwith commission Smith; that the

rules did not make the right of reconsideration dependent upon compliance by the President with its request that the resolution of consent be returned; that the rules were binding upon the President and all other persons dealing with the Senate in this matter; that as the President was charged with knowledge of the rules, his signing of the commission prior to the expiration of the period within which the Senate might entertain a motion to reconsider had no conclusive legal effect; and that the nominee who had not been legally confirmed could not by his own acts in accepting the commission, taking an oath of office and beginning the discharge of his duties vest himself with any legal rights.

Counsel for the Senate assert that a survey of the historical development of the rules of the Senate relating to reconsideration confirms its present interpretation of the rules; and that the interpretation is further confirmed by the multitudinous instances appearing in the Executive Journal of the Senate in which the President, at the Senate's request, returned resolutions, both of confirmation and of rejection.[5] We are of opinion that the Senate's contention is unsound.

---

[5]At the argument in the Supreme Court of the District, the parties joined in submitting a pamphlet containing a list of precedents for the reconsideration by the Senate of a vote confirming or rejecting a nomination after notification of the President of its action thereon; and this pamphlet was filed with the opinion of that court. Before entry of the order denying the petition, the parties, by stipulation, submitted additional information in regard to facts concerning nomination, confirmation and the issuance of commissions in special cases, as shown by the Senate Executive Journal, by records of the Executive Offices of the White House, and in certain instances by departmental records. The stipulation was made part of the record in the case in the Supreme Court. In accordance with agreement of counsel, both the pamphlet and the stipulation were printed as one document by the Clerk of the Court of Appeals.

Unless otherwise indicated, the references in the succeeding footnotes are drawn from this material.

*First.* The question primarily at issue relates to the construction of the applicable rules, not to their constitutionality. Article I, § 5, cl. 2, of the Constitution provides that "each house may determine the rules of its proceedings." In *United States* v. *Ballin,* 144 U. S. 1, 5, the Court said: "Neither do the advantages or disadvantages, the wisdom or folly, of . . . a rule present any matters for judicial consideration. With the courts the question is only one of power. The Constitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained. But within these limitations all matters of method are open to the determination of the house, and it is no impeachment of the rule to say that some other way would be better, more accurate or even more just." Whether, if the rules of the Senate had in terms reserved power to reconsider a vote of advice and consent under the circumstances here presented, such reservation would be effective as against the President's action, need not be considered here.

As the construction to be given to the rules affects persons other than members of the Senate, the question presented is of necessity a judicial one. Smith asserts that he was duly appointed to office, in the manner prescribed by the Constitution. See *Marbury* v. *Madison,* 1 Cranch 137, 155, 156. The Senate disputes the claim. In deciding the issue, the Court must give great weight to the Senate's present construction of its own rules; but so far, at least, as that construction was arrived at subsequent to the events in controversy, we are not concluded by it.

*Second.* Obviously, paragraph 3 of Senate Rule XXXVIII contemplates circumstances under which the Senate may still reconsider a vote confirming or rejecting

a nomination, although notification of its original action has already been sent to the President. Otherwise, the provision for a motion to request the return of a resolution would be meaningless. But paragraph 4 of the same rule contemplates that normally such notification shall be withheld, until the expiration of the time limited for making a motion to reconsider, and if a motion be made, until the disposition thereof; for it declares that notification shall be so withheld " unless otherwise ordered by the Senate." In this case the Senate did so order otherwise; and the question is as to the meaning and effect of this special procedure.

Smith urges that upon receipt of a resolution of advice and consent, final upon its face, the President is authorized to complete the appointment; and that a request to return the resolution can have no effect unless it is received prior to the signing of the commission; that if this were not true the notification would not authorize the President to do anything until the expiration of the reconsideration period, and hence would be futile; or it would purport to authorize him to make an appointment defeasible upon reconsideration and reversal of the Senate's action, and hence would violate a constitutional requirement of unconditional assent. We do not understand counsel for the appellant to urge that an appointment so defeasible may be made, and we have, therefore, no occasion to consider the constitutional objection, advanced on Smith's behalf, to a construction permitting such action. Nor need we consider whether the President might decline to accede to a request to return the Senate's resolution if he received it before making the appointment. The question at issue is whether, under the Senate's rules, an order of notification empowers the President to make a final and indefeasible appointment, if he acts before notice of reconsideration; or whether,

despite the notification, he is powerless to complete the appointment until two days of executive session shall have passed without the entry of a motion to reconsider.

*Third.* The natural meaning of an order of notification to the President is that the Senate consents that the appointment be forthwith completed and that the appointee take office. This is the meaning which, under the rules, a resolution bears when it is sent in normal course after the expiration of the period for reconsideration. Notification before that time is an exceptional procedure, which may be adopted only by unanimous consent of the Senate.[6] We think it a strained and unnatural construction to say that such extraordinary, expedited notification signifies less than final action, or bears a different meaning than notification sent in normal course pursuant to the rules.

It is essential to the orderly conduct of public business that formality be observed in the relations between different branches of the Government charged with concurrent duties; and that each branch be able to rely upon definite and formal notice of action by another.[7] The construction urged by the Senate would prevent the President from proceeding in any case upon notification of advice and consent, without first determining through unofficial

---

[6] The practice of the Senate seems to be to treat the ordering of immediate notification to the President as, in effect, a suspension of the rules requiring unanimous consent. See, *e. g.,* 74 Cong. Rec., pt. 2, pp. 1748–1749, 1937, 2066; *id.* pt. 3, p. 3393; Cong. Rec. 72d Cong., 1st Sess., pp. 3782, 3881.

[7] Paragraph (2) of Senate Rule XIII, dealing with reconsideration of measures which have been sent to the House of Representatives, contains a provision for a motion to request the return of a measure similar to that of Rule XXXVIII in respect to nominations. No precedent has been called to the Court's attention indicating that this provision would be construed as permitting the Senate to proceed to a reconsideration, even though the House declined to honor its request.

channels whether the resolution had been forwarded in compliance with an order of immediate notification or by the Secretary in the ordinary course of business; for the resolution itself bears only the date of its adoption. If the President determined that the resolution had been sent within the time limited for making a motion to reconsider, he would have then to inform himself when that period expired. If the motion were made, he would be put upon notice of it by receipt of a request to return the resolution. But under the view urged by the Senate, that reconsideration may proceed even though the resolution be not returned, he would receive no formal advice as to the disposition of the motion, save in the case of a final vote or rejection or confirmation.[8] The uncertainty and confusion which would be engendered by such a construction repel its adoption.

The Senate has offered no adequate explanation of the meaning of an order of immediate notification, if it has not the meaning which Smith contends should be attached to it. Its counsel argues that the practice of ordering such notification developed at a time when the Senate passed upon nominations in closed session; and that the order may have been simply a means of furnishing the President with information, not available through public channels, concerning the probable attitude of the chamber prior to final action. It is suggested that the President might thereby be enabled to muster support for a nominee at first rejected, or to withdraw the nomination before final rejection. But the explanation has no application to a notification of a favorable vote. Nor is it

---

[8] Thus, the motion to reconsider might be withdrawn, or tabled, or, when put to a vote, might fail, in any of which events the nomination would stand as confirmed, without further notice to the President. If the motion prevailed, the nomination would stand as originally made by the President, but no notice of that fact would reach him unless it were again finally acted upon.

credible that the Senate by unanimous vote would adopt a procedure designed merely to permit the exertion of influence upon a majority to change a decision already made. The construction urged is a labored one. It should not be adopted unless plainly required by the history of the rules and by the meaning which the Senate and the Executive Department in practice have given them.

*Fourth.* We find nothing in the history of the rules which lends support to the contention of the Senate; and much in their history to the contrary. The present rules relating to the reconsideration of votes confirming or rejecting nominations are substantially those of March 25, 1868. The earlier history is this: Prior to April 6, 1867, no rule had dealt specifically with reconsideration of votes concerning nominations. A resolution adopted February 25, 1790, provided generally that " when a question has been once made and carried in the affirmative or negative, it shall be in order for any member of the majority to move for a reconsideration of it." In 1806, two limitations were attached to this provision: first, that, " no motion for the reconsideration of any vote shall be in order, after a bill, resolution, message, report, amendment, or motion, upon which the vote was taken, shall have gone out of the possession of the Senate, nor after the usual message shall have been sent from the Senate, announcing their decision;" and, second, that no such motion shall be in order " unless made on the same day in which the vote was taken, or within the three next days of actual session of the Senate thereafter." [9] In 1818, a resolution was adopted, " that in future, all nominations approved, or definitely acted on by the Senate, be by the Secretary returned to the President of the United States, from day

---

[9] This rule was altered in 1820 by limiting the time for making a motion to reconsider to two days, and by striking out the words " nor after the usual message shall have been sent from the Senate."

to day, as such proceedings may occur, any rule or usage to the contrary notwithstanding."

These rules remained in force until 1867.[10]   Under them, the Senate decided by unanimous vote in 1830, in the earliest of the precedents cited by the parties, that it was without power to reconsider its rejection of the nomination of Isaac Hill as Second Comptroller of the Treasury, " because the President had been notified."   No request appears to have been made in that case for the return of the resolution of rejection.   Subsequently, however, it became the practice for the President upon request, to return resolutions of rejection or confirmation, as a matter of comity; and the Senate thereupon reconsidered its action, despite the question under its rules whether reconsideration was in order.   Between 1830, the time of Hill's case, and April 5, 1867, about 160 such

---

[10] In 1792, on January 27, the Senate in executive session ordered, " that the President of the United States be furnished with an authenticated transcript of the executive records of the Senate, from time to time;" and " that no executive business, in future, be published by the Secretary of the Senate."   The latter provision remained in force until June 18, 1929, when it was resolved that all such business should be transacted in open session.   The former provision is still in force, although modified by subsequent rules.   See note 4, *supra*. The first such modification was the resolution of March 27, 1818, mentioned in the text, making special provision for immediate notification of the President concerning action upon nominations.   On January 5, 1829, it was " *Resolved*, That no paper, sent to the Senate by the President of the United States, or any executive officer, be returned, or delivered from the office of the Secretary, without an order of the Senate for that purpose."

On February 18, 1843, the Senate adopted the following resolution: " That nominations made by the President to the Senate, and which are neither approved nor rejected during the session at which they are made, shall not be acted upon at any succeeding session without being again made by the President, and that such shall hereafter be the rule of the Senate."   This resolution is in substance incorporated in present Rule XXXVIII, paragraph (6),

cases occurred. But several occurring at the close of the period show clearly the limits of the practice. In two cases, the President declined to return the resolution on the ground that the commission had already issued; and the Senate acceded to the refusal.[11] In another, the resolution was returned, but with the statement that a commission had issued; and the Senate appears to have taken no further action.[12] And on April 3, 1867, in the case of A. C. Fisk, the Senate upheld a decision of the chair that a motion to reconsider a vote of confirmation was out

---

[11] These were the nominations of John H. Goddard, in 1864, for Justice of the Peace for Washington County, District of Columbia, and of Westley Frost, in 1867, as Assessor of Internal Revenue for the Twenty-first District of Pennsylvania. In the Goddard case, President Lincoln advised the Senate simply that the resolution was sent to the Department of State prior to receipt of the request for its return, and that " a commission in accordance therewith [was] issued to Mr. Goddard on the same day, the appointment being thus perfected, and the resolution becoming a part of the permanent records of the Department of State." No further proceedings are recorded in the Senate Executive Journal. In the Frost case, after a similar reply, Senator Sherman offered a resolution that " the Secretary of the Treasury be requested to recall the commission . . . and that the President be requested to return to the Senate the action of the Senate in the appointment. . . ." This resolution was rejected by a vote of 14 to 23.

[12] In the case of Joseph K. Barnes, nominated as Medical Inspector General in 1864, President Lincoln returned the resolution of confirmation, but " respectfully called " the attention of the Senate to certain circumstances, including the execution and delivery of a commission before the making of the motion to reconsider. The author of the motion to reconsider asked, and had leave, to withdraw it.

In the case of H. H. Smith, nominated as Secretary of the Territory of New Mexico, in 1867, President Johnson returned the resolution of confirmation, together with a report of the Secretary of State that " the commission was made out and sent to the Execuive Mansion for signature, and has not been returned." It is not clear that a commission did, in fact, issue. No further proceedings are recorded in the Journal.

of order after the President had been notified, and before the resolution had been returned.

Three days thereafter decisive changes were made in the rules relating both to reconsideration and to notification of the President.[18] On April 6, 1867, the rule concerning reconsideration was modified so as to except specifically motions to reconsider votes upon a nomination from the general prohibition of any such motion where the paper announcing the Senate's decision had gone out of its possession; and the present provision was added, that " a motion to reconsider a vote upon a nomination shall always, if the resolution announcing the decision of the Senate has been sent to the President, be accompanied by a motion requesting the President to return the same to the Senate." At the same time, it was provided that " all nominations approved or definitely acted on by the Senate shall be returned by the Secretary on the next day after such action is had, unless otherwise ordered by the Senate."

These changes in the rules not only met the situation which had arisen in Fisk's case, but gave explicit sanction to the long-standing practice of requesting the President to return resolutions upon nominations and thereafter reconsidering them. Counsel for the Senate argue that, in addition, they completely reversed the practice theretofore established in respect to reconsideration after notification of the President; that by divorcing the period for reconsideration from the normal time for notifying the President, they showed an intention that the power to reconsider should be unaffected by the transmittal of no-

---

[18] These changes were apparently prompted by certain of the incidents just referred to. The resolution presented by Senator Sherman in the Frost case, *supra*, note 11, was rejected on April 1, 1867. The amended rules were adopted, April 6, 1867, on motion of Senator Fessenden, who had appealed to the Senate from the decision of the chair in the Fisk case.

tification or by the President's action thereon. In a case occurring shortly after the new rules were adopted, however, the Senate Committee on the Judiciary clearly showed its understanding that no such change had taken place. Noah L. Jeffries was nominated for Register of the Treasury and confirmed and the President was notified. To a subsequent request for the return of the resolution the President replied that a commission had already issued. The Committee on the Judiciary, to which the matter was referred, expressed the opinion that the Senate had power to reconsider its vote, but gave as its reason that the request to return the resolution had in fact been received before the commission was signed.[14]

---

[14] The President returned the resolution, with an accompanying report of the Secretary of the Treasury. The report stated " that in the ordinary transaction of business the commission was issued on the 14th instant by the State Department, and was received at this Department on the 15th instant. General Jeffries had legally qualified and entered upon the discharge of the duties of his office prior to the receipt of the Senate resolution of the 14th instant, which, under these circumstances, is herewith returned." The Committee on the Judiciary reported in part as follows: " It . . . appears that before Mr. Jeffries had been qualified or commissioned as required by law precedent to his entering upon the discharge of his functions under his permanent appointment the President of the United States, in whom the sole right of appointment, subject to the approval of the Senate, is vested by the Constitution, had received notice from the Senate that it had not finally acted upon the question of advising and consenting to the nomination, and withdrawing its resolution of assent to that appointment which had been transmitted to the President on the same day; and the committee are, therefore, of the opinion that the Senate may now lawfully reconsider its vote advising and consenting to the appointment if it shall see proper cause therefor. In this view of the case a majority of the committee were of opinion that it was inexpedient to enter upon an inquiry as to the matter of fact whether the issuing of the commission in this case and the qualification of the officer in question was hastened for any cause out of the usual course of business." The only evidence concerning the subsequent history of the case is that during the same session,

The basis for the argument drawn from the rules of 1867, however, was clearly destroyed a year later, when the rule for notification was further altered, and given virtually its present form. The new rule, adopted March 25, 1868, provided that " nominations approved or definitely acted on by the Senate shall not be returned by the Secretary of the Senate to the President until the expiration of the time limited for making a motion to reconsider, or while a motion to reconsider is pending, unless otherwise ordered by the Senate." No material changes have since been made, either in this rule or in that respecting reconsideration.[15]

some five months later, Mr. Jeffries was nominated for another office, and rejected.

In the case of Samuel M. Pollock, confirmed as brigadier general by brevet, on April 8, 1867, the President, on April 11, complied with a request to return the resolution sent him on April 10, and the Senate later rejected the nomination. The records of the War Department show April 11, 1867, as the date of a commission to Samuel M. Pollock. The entry is marked in red ink, " Cancelled (rejected by the Senate)." Counsel for Smith, and the Attorney General and Solicitor General in their brief *amici curiae* question whether a commission was in fact issued in this case. See note 19 *infra*.

[15] The phrase " approved or defintely acted on " was changed in 1877 to " confirmed or rejected," and as so changed the rule still stands as paragraph 4 of Rule XXXVIII. The rule on reconsideration was also given its present wording in 1877, when the material affecting nominations was taken out of the general provision relating to reconsideration in Rule 20 and placed in a separate rule. The only changes of substance were the extension of the period for reconsideration to two days of " actual executive session," and the addition of the sentence: "Any motion to reconsider the vote on a nomination may be laid on the table without prejudice to the nomination, and shall be a final disposition of such motion." At the same time there was added, as a separate rule, the following, now paragraph 5 of Rule XXXVIII: " When the Senate shall adjourn or take a recess for more than thirty days, all motions to reconsider a vote upon a nomination which has been confirmed or rejected by the Senate, which

Read in the light of the preceding rules and the practice under them, the meaning of the rules thus established is, in our opinion, free from doubt. Prior to 1867, it had been continuously recognized that the President was authorized to commission a nominee upon receiving notification of the advice and consent of the Senate, and that the signing of a commission cut short the power of reconsideration. The Senate so concedes. No explicit change in this respect was made either in the rules of 1867 or of 1868. The inference that no change was intended is strengthened by the fact that under the latter rules, for the first time, the sending of notification ordinarily coincided with the lapse of power in the Senate to reconsider its action, under any circumstances. The proviso, "unless otherwise ordered by the Senate," made possible the sending of notification before the expiration of the period provided for reconsideration. But there is no indication that the Senate intended thereby to introduce a complete departure from past practice. The natural inference is to the contrary. The proviso for immediate notification must be read in connection with the clause permitting motions to request the return of a resolution, which would be in order only in cases in which the Senate had acted under the proviso. A motion to request the return of a resolution was a familiar device, employed by the Senate on repeated occasions. There is no reason to suppose that such a motion was now intended to have a different effect than that which, by common understanding, it had had in the past. The common understanding had been that a motion to request the return of a resolution was without effect if the President before receiving it had completed the appointment.

---

shall be pending at the time of taking such adjournment or recess, shall fall; and the Secretary shall return all such nominations to the President as confirmed or rejected by the Senate, as the case may be."

44

*Fifth.* This construction of the rules is confirmed by the precedents in the Senate arising since 1868. In all cases in which no commission had yet issued, the Executive has honored the request of the Senate for a return of its resolution, in accordance with the invariable practice from the beginning.[16] In the only instances, prior to the case at bar, in which the Senate had occasion to consider the effect, under the present rules, of the signing of the commission before receipt of its request, it indicated an understanding that the power to reconsider was gone.[17]

[16] The list of precedents incorporated in the record includes some 170 cases of nominations, arising since March 25, 1868, in which motions to reconsider and request the return of the resolution were entered. In almost all the cases the Senate Executive Journal records affirmatively that the President complied with the request. In a few instances the fact of such return is not recorded, although the Senate proceeded with the reconsideration. In no case, except the two referred to in the text, does it affirmatively appear that the President declined to return the resolution. In no case since the earliest precedent listed, in 1830, is there a record of refusal to honor the request on any other ground than that a commission had been signed and the appointment perfected.

[17] In the case of J. C. S. Colby, nominated as Consul at Chin Kiang, the Senate on December 17, 1874, voted to confirm and ordered that the President be notified forthwith. On December 21 a motion to reconsider was entered and the return of the resolution was requested. President Grant replied, "Mr. Colby's commission was signed on the 17th day of December, and upon inquiry at the Department of State it was found that it had been forwarded to him by mail before the receipt of the resolution of recall." There is no evidence of further action on the part of the Senate.

Morris Marks was confirmed as Collector of Internal Revenue for the District of Louisiana on June 6, 1878. On June 11 a motion to reconsider was entered and the return of the resolution requested. President Hayes wrote: "In reply I would respectfully inform the Senate that upon the receipt of the notice of confirmation the commission of Mr. Marks was signed and delivered to him, on the 8th instant." The Senate Executive Journal records the fact that this message was read, but contains no reference to any subsequent proceedings in the case.

In those two cases the President wrote informing the Senate of the issuance of a commission, and no further action was taken by it.

Attention is called, however, to other cases in which it is contended that the President returned the resolution in spite of the intervening signing of a commission, and that the Senate reconsidered its action. Sixteen cases arising after 1868 are cited.[18] The value of most of these

---

[18] The cases of Lewis A. Scott, originally confirmed on June 7, 1870, as Postmaster at Lowville, New York; John W. Bean, confirmed as first lieutenant on January 11, 1872; James F. Legate, confirmed as Governor of Washington Territory on January 26, 1872; George Nourse, confirmed as Register of the Linkville Land Office, Oregon, June 5, 1872; Alva A. Knight, confirmed as United States Attorney for the Northern District of New York, January 21, 1873; Belle C. Shumard, confirmed as Deputy Postmaster at Fort Smith, Arkansas, February 6, 1873; Peter C. Shannon, confirmed as Chief Justice of the Supreme Court of Dakota Territory, March 17, 1873; E. Raymond Bliss, confirmed as Deputy Postmaster at Columbus, Mississippi, March 18, 1873; John W. Clark, confirmed as Deputy Postmaster at Montpelier, Vermont, March 20, 1873; William H. Tubbs, confirmed as Postmaster at New London, Conn., December 20, 1878; Joseph H. Durkee, confirmed as Marshal of the Northern District of Florida, June 30, 1879; Laban J. Miles, confirmed as Indian Agent at Osage Agency, Indian Territory, February 15, 1883; George W. Pritchard, confirmed as United States Attorney for the Territory of New Mexico, February 19, 1883; Thomas H. Reeves, confirmed as Indian Agent, Quapau Agency, Indian Territory, April 9, 1884; Edwin I. Kursheedt, confirmed as Marshal for the Eastern District of Louisiana, March 27, 1889; and William Plimley, confirmed as Assistant Treasurer, March 10, 1903.

In the Bean, Legate, Nourse, and Kursheedt cases, the Senate Executive Journal does not record whether or not the President returned the resolution, as requested. The President withdrew the nomination of Mr. Legate, on his own request, before the Senate had proceeded further than to debate the motion to reconsider. The Reeves and Plimley nominations were also withdrawn. In the Scott, Knight and Miles cases the motion to reconsider was withdrawn after return of the resolution; in the Durkee case it was tabled; and in the Bliss and Pritchard cases, when put to a vote, it failed. In the Clark case

cases as precedents is questioned by Smith, and also by the Attorney General and the Solicitor General in the brief filed by them *amici curiae*. In none of the cases is there any indication that the Senate was informed of the fact of the signing of the commission, if in fact the commission was signed. Therefore, none of those cases furnish an authoritative construction by the Senate of its own rules made prior to the events culminating in the present litigation. They amount, at most, only to evidence of the construction placed upon the rules by the Executive Department. The weight of many of the cases, as such evidence, is further lessened by the circumstance that the records do not disclose beyond dispute that a commission had actually been signed by the President before receipt of the Senate's request for return of its resolution.[19] All the cases but one arose between 1870

no further proceeding is recorded after the return of the resolution. In the Shannon and Tubbs cases the nominee was again confirmed; in the Shumard, Bean, Nourse, and Kursheedt cases, the Senate adopted the motion to reconsider, and either recommitted the nomination or placed it upon the calendar. Only in the last six cases did the Senate in fact exercise the power to reconsider.

It is conceded by Smith that in the cases of Legate, Shumard, and Plimley, a commission had in fact been signed by the President at the time he received and acceded to the request for return of the resolution. In the remaining cases the evidence of signing of the commission rests mainly upon entries of dates in the records of the executive offices of the White House. In the Knight and Miles cases there are also copies of the commission in the records of the respective departments. The entry of the date of commission in the Tubbs case appears to have been erased, although it is still legible. Those in the Reeves and Kursheedt cases are scratched or crossed out. See note 19 *infra*.

[19] The contention of Smith, in which the Attorney General and Solicitor General concur, is that the dates relied on in the White House records are the dates which the commissions bore, but not necessarily those on which they were signed. The practice in the executive offices in this respect appears not to have been uniform. Thus, in certain instances pointed out in the brief *amici curiae*, taken

and 1889, nine of them in the administrations of President Grant and President Hayes. Each of these Presidents on occasion refused to accede to similar requests on the ground that a commission had already been issued.[20]

Perhaps the most satisfactory explanation of the instances cited on behalf of the Senate is that the Executive Department has not always treated an appointment as complete upon the mere signing of a commission.[21] Compare *Marbury* v. *Madison,* 1 Cranch 137; *United States* v. *Le Baron,* 19 How. 73, 78. Even in the view most favorable to the Senate's contention they fall far short of

from a later period, it appears affirmatively, under the heading "Remarks," that the commission was actually signed at a date subsequent to that entered under the heading "Commissioned." On the other hand in the Plimley case, *supra,* note 18, and in the Colby and Marks cases, *supra,* note 17, other evidence indicates that the signature was in fact made on the date entered in the White House records. It appears to be the practice for the appropriate department to prepare the commission in all respects, including the date, upon receipt of notification of confirmation, and thereafter to present it to the Executive to be signed. This practice creates the possibility of disparity between the date of signing and the date appearing on the commission.

[20] In the Colby and Marks cases, respectively, *supra,* note 17. The most recent case, which is urged as strongly supporting the Senate's contention, is that of William Plimley. President Roosevelt nominated Plimley in 1903 for Assistant Treasurer of the United States. His commission was made out and signed, and a letter notifying him of his appointment and enclosing an official bond was placed in the mails. Notice of a motion to reconsider the vote of confirmation having been received at the White House, the chief of the division of appointments ordered the letter extracted from the mails, and the President returned the resolution and subsequently withdrew the nomination.

[21] Thus, it will be noted in both the Colby and Marks cases, *supra,* note 17, that the commission had been either placed in the mails or delivered, and that the message of the President placed emphasis on these facts.

clear recognition of the power, never heretofore asserted by the Senate itself, to reconsider a vote of confirmation, after an appointee has actually assumed office and entered upon the discharge of his duties. We are unable to regard any of the cases as of sufficient weight to overcome the natural meaning of the clauses.[22]

*Sixth.* To place upon the standing rules of the Senate a construction different from that adopted by the Senate itself when the present case was under debate is a serious and delicate exercise of judicial power. The Constitution commits to the Senate the power to make its own rules; and it is not the function of the Court to say that another rule would be better. A rule designed to ensure due deliberation in the performance of the vital function of advising and consenting to nominations for public office, moreover, should receive from the Court the most sympathetic consideration. But the reasons, above stated, against the Senate's construction seem to us compelling. We are confirmed in the view we have taken by the fact that, since the attempted reconsideration of Smith's confirmation, the Senate itself seems uniformly to have treated the ordering of immediate notification to the Pres-

---

[22] In addition to the Senate precedents above discussed, counsel for the Senate cite various decisions from state courts relating to reconsideration by state and municipal deliberative bodies. *People ex rel. MacMahon* v. *Davis,* 284 Ill. 439; 120 N. E. 326; *Witherspoon* v. *State ex rel. West,* 138 Miss. 310; 103 So. 134; *Wood* v. *Cutter,* 138 Mass. 149; *Crawford* v. *Gilchrist,* 64 Fla. 41; 59 So. 963; *Dust* v. *Oatman,* 126 Mich. 717; 86 N. W. 151. None of these cases, however, presented the question here at issue of the effect upon the power to reconsider of an intervening notification of confirmation sent to an appointing officer, and of the signing by that officer of a commission. It is therefore unnecessary to examine the reasoning upon which they were decided.

ident as tantamount to authorizing him to proceed to perfect the appointment.[23]

The judgment of the Supreme Court of the District is

*Affirmed.*

---

[23] Thus in the confirmation of Judge Louie W. Strum, Senator Fletcher, in seeking unanimous consent " to waive the rule about two subsequent executive sessions," and notify the President of the Senate's action, gave as his reason that " this judge is very much needed, and has been for some months." 74 Cong. Rec. pt. 7, pp. 6489–6490. Notification was ordered on December 21, 1931, of votes confirming nominations to the Interstate Commerce Commission and the Board of Mediation, upon the statement of Senator Couzens that otherwise " those gentlemen . . . can not hold office until after two executive sessions shall have been held." Cong. Rec. 72d Cong., 1st Sess., December 21, 1931, p. 1003. Again, on December 22, 1931, on the confirmation of Robert B. Adams as engineer in chief of the Coast Guard, Senator Copeland stated that " this man's appointment expired on the 18th of December, and it is very important that he be immediately put on duty." Notification was ordered. *Id.* 1131. On February 1, 1932, notification was ordered of the confirmation of certain appointees to the Reconstruction Finance Corporation board, upon the statement of Senator Robinson that " it is believed that there is necessity for the board to function immediately." *Id.* 3071. See also, *id.* 3415, 3582, 3881.