## DeWOODY v UNDERWOOD et

Ohio Appeals, 9th Dist, Summit Co

Decided December 5, 1940

Wade DeWoody, director of law, and Harold L. Mull, Akron, for appellee.

Leonard M. Bertsch and Gillum H. Doolittle, Akron, for appellant.

Charles E. Smoyer, amicus curiae.

## OPINION

By WASHBURN, PJ.

This is an action for a declaratory judgment as to the rights and status of Leonard M. Bertsch in reference to the position of civil service commissioner of the city of Akron, Ohio.

The trial court determined that Leonard M. Bertsch is not a member of said civil service commission, and the controversy is before this court upon Leonard M. Bertsch's appeal on questions of law.

The facts are not in dispute.

The term of Aldrich B. Underwood as a member of said commission expired on December 31, 1939, and, as provided by the charter, only a Democrat could be selected to succeed him.

The charter provided for a nominating committee consisting of the president of the Akron University, the superintendent of schools, and the presiding judge of the Common Pleas Court "at the time the vacancy * * * occurs." The charter further provided that said committee should nominate three electors for such vacancy, and that "from such group of three nominees the mayor shall, with consent of council, appoint one to fill" such vacancy.

At the time of the expiration of Underwood's term on December 31, 1939, one member of said designated committee—the presiding judge of the Common Pleas Court—was just completing his term of service as presiding judge, and he was succeeded in that office by another Common Pleas judge on January 2, 1940.

The mayor notified the committee some time between January 3 and January 31, 1940, that the term of a civil service commissioner had expired on December 31, 1939, and at the time of such notification and when the subsequent nominations were made, the new presiding judge was one of said committee, the other two members being individuals who both before and after December 31, 1939, were members of said committee.

The question is raised as to whether the new presiding judge was qualified to act as one of the committee on nominations.

Our view is that that is not a matter of very great importance, because there were two members of the committee who were admittedly qualified

to act; and, in the absence of some special provision, the general rule that the majority of a committee may function as such, would apply.

When a person by appointment to an office for a fixed term and until his successor has been "appointed and qualified" is discharging the duties of the office after the expiration of the fixed term, and the appointing power is not authorized to appoint his successor until three persons have been nominated, a vacancy in the office does not occur, within the meaning of that term as used in said charter, until such nominations have been made.

We construe the language in the charter which provides for the personnel of said committee "at the time the vacancy in the civil service commission occurs" to mean that the individuals who are members of the committee at the time they are called upon to make nominations, are qualified to make the nominations.

The nomination of two Democrats and one Republican when three Democrats only should have been nominated, is, of course, an irregularity, but where no objection is made and one of the Democrats nominated is appointed by the mayor, such irregularity does not affect the legality of the appointment.

On February 4, 1940, the committee notified the mayor of its nomination of Aldrich B. Underwood and Leonard M. Bertsch (Democrats) and Robert R. Jones (Republican), and on February 5, 1940, the mayor appointed Leonard M. Bertsch to the position of civil service commissioner, and on February 6, 1940, the council duly confirmed such appointment. On February 8, 1940, the mayor in writing notified Leonard M. Bertsch of his appointment, and on the next day Leonard M. Bertsch, in a writing addressed to the mayor accepted said appointment. On February 10, 1940 Bertsch took the oath of office as civil service commissioner, and entered upon the discharge of the duties of the office.

On February 13, 1940, which was the day of the next regular meeting of the council after said confirmation, a member of the council who had voted in favor of such confirmation, made a motion "that said confirmation of Leonard M. Bertsch be reconsidered by the council"; and it is stipulated in the record herein that "upon reconsideration, the said Leonard Bertsch failed to receive confirmation by the council."

. The record discloses that the rules of council provide that any action of the council may be reconsidered at the next regular meeting after such action upon the motion of a councilman "who voted with the prevailing side."

The record does not disclose any other rule, ordinance or resolution of the council, or provision of the charter, affecting the power of the council to withdraw its consent to an appointment.

The general rule established by the weight of authority is that an appointment once made and received by the appointee is irrevocable and not subject to reconsideration. This is especially true as to executive appointments, and applies whether the appointment is made by a collective body or by a single executive.

There are cases holding that if the collective body authorized to make the appointment is a legislative body, the act of appointment being intrinsically administrative or executive, the body has no more power to reconsider and revoke the appointment than an executive has, and that if its action is publicly declared, it cannot be rescinded or revoked by reconsideration.

There are also cases which hold that a legislative body, in making the appointment, acts in a legislative capacity, and that the legislative body may, under its rules applying to legislative acts, reconsider and rescind the appointment at any time within which, in accordance with its rules, it may reconsider its ordinary legislative acts. Other cases hold that it cannot so reconsider, if the appointment has been regularly completed and the appointee has qualified.

Where the appointment is to be made by an executive with the consent of a legislative body, there is a difference of

opinion in the various cases as to whether, in giving consent, the legislative body acts in a legislative or executive capacity, and, if legislative, when and under what circumstances the legislative body may reconsider and withdraw its consent once given, where, under the rules of the legislative body, it may reconsider and change its ordinary legislative acts.

We have considered many of the cases mentioned in the annotation on this general subject found in 89 A. L. R., 132 to 163, and other cases, and are of the opinion that the weight of authority justifies us in holding that—

Where the law requires an appointment to official position to be made by an executive "with the consent" of a legislative body, and such consent is regularly given by what may be considered as legislative action, and the executive, acting upon such consent, notifies the appointee in writing of his appointment, and the appointee in writing accepts the appointment and qualifies for the position by taking the oath of office and entering upon the discharge of the duties thereof, such legislative body cannot thereafter reconsider its action and withdraw such consent, even though within the period during which its rules permit reconsideration of its ordinary legislative acts. United States v Smith, 286 U. S. 6, 76 L. Ed. 954, 52 S. Ct. 475.

The trial court was in error in declaring that Leonard M. Bertsch is not a member of the civil service commission of the city of Akron, and said judgment is reversed, and a judgment declaring that he is a member of such commission may be entered.

Judgment reversed, and judgment for appellant.

DOYLE and STEVENS, JJ., concur.