# Constitutionality of Proposed Legislation Requiring Renomination and Reconfirmation of Executive Branch Officers Upon the Expiration of a Presidential Term

A bill prohibiting the heads of Executive and Military Departments and certain other Executive officers from remaining in their positions during a subsequent Presidential term unless renominated by the President and reconfirmed by the Senate would, if applied to officers appointed before the bill was enacted, unconstitutionally interfere with the President's appointment and removal powers. Even were the bill limited to prospective effect, it would be subject to serious constitutional doubt as contrary to the Constitution's placement of the Executive power in the President.

March 6, 1987

LETTER FOR THE CHAIRMAN,
SENATE COMMITTEE ON THE JUDICIARY

This letter presents the views of the Department of Justice on S. 318, the Senate Confirmation Act of 1987. The Department of Justice strongly opposes the enactment of this bill.

The bill would provide that the heads of the Executive and Military Departments, the United States Trade Representative, the Director of the Office of Management and Budget, the Director of the Central Intelligence Agency, and the Director of the Arms Control and Disarmament Agency who have served in that position during the last year of a Presidential term may not serve in the same position during the succeeding Presidential term unless reappointed by the President by and with the advice and consent of the Senate.[1] The bill does not facially distinguish between officers appointed after its enactment and officers who are incumbent at the time of the bill's enactment.

The application of the reconfirmation requirement to persons in office on the effective date of the bill clearly would be unconstitutional. At present, these incumbent officers serve at the pleasure of the President and could therefore remain in office after the expiration of the term of the President who appointed them, if he were re-elected or if a newly elected President should wish to retain

---

[1] Section 2(b) of the bill would require that all information obtained in the course of a background investigation conducted by the Federal Bureau of Investigation with respect to specified nominees which is transmitted to the President shall also be transmitted to the Senate. The bill does not explicitly waive or preserve any statutory non-disclosure provisions that could apply to materials found in a background investigation, such as grand jury materials, for example. We believe that Congress should make clear its intent to waive or preserve any such provisions.

them.[2] Under the bill, however, they could not serve during the next Presidential term unless reappointed by the President by and with the advice and consent of the Senate. Thus, the bill would purport to remove incumbent officers from their offices and in so doing would contravene the Constitution.

As the Supreme Court held in *Myers* v. *United States,* 272 U.S. 52, 122 (1926), the power to remove officers of the Executive Branch is vested exclusively in the President with the exception of impeachment or the *bona fide* abolition of their office. Indeed, the exclusivity of the President's removal power cannot be circumvented by an attempt of the Senate to withdraw a confirmation; 36 Op. Att'y Gen. 382 (1931); *United States* v. *Smith,* 286 U.S. 6 (1932); by cutting off of the salaries of incumbent officials, *United States* v. *Lovett,* 382 U.S. 303 (1946); by making new, limiting qualifications for an office applicable to an incumbent, 111 Cong. Rec. 17597–98 (1965) (statement of Assistant Attorney General Schlei); or by "ripper" legislation which purports to abolish an office and immediately recreate it. Veto Message re: S. 518, 93rd Cong., 1st Sess., 9 Weekly Comp. Pres. Doc. 681 (1973).

The proposal raises constitutional concerns, even as to officers who are appointed after the enactment of the bill. The United States Constitution explicitly states: "The executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, §1. In addition, §3 of the same article provides that the President "shall take Care that the Laws be faithfully executed." A law which has the effect of subjecting executive officers to renomination and reconfirmation by the Senate is in tension with the placement of the executive power in the President. If the Congress sets a duration for the service of executive officers, those officers will naturally be responsive to the concerns of the Senate in executing the laws; otherwise, those officers would run the risk that the Senate would not reconfirm them at the end of their term.[3] Such a sharing of the responsibility for the execution of the laws is at odds with separation of powers principles.[4]

---

[2] The opinion of the Attorney General in 36 Op. Att'y Gen. 12 (1929) dealt with that situation.

[3] Making executive officers accountable in this manner to the Legislative Branch is contrary to our constitutional scheme. As the Supreme Court has explicitly recognized, the power to remove is "an indispensable aid" to the "effective enforcement of the law." *Myers* v. *United States,* 272 U.S. 52, 132 (1926). The Court, therefore, found this power to be an incident of the President's power to take care that the laws be faithfully executed. Last Term, in *Bowsher* v. *Synar,* 478 U.S. 714 (1986), the Supreme Court recognized the logical corollary to this principle·

> To permit an officer controlled by Congress to execute the laws would be, in essence, to permit a congressional veto. Congress could simply remove, or *threaten to remove,* an officer for executing the laws in any fashion found to unsatisfactory to Congress. This kind of congressional control over the execution of the laws . . . is constitutionally impermissible.

*Id.* at 726–27 (emphasis added). Though the encroachment on executive power posed by this bill is different in degree from that presented in *Bowsher,* in which Congress had the sole authority to remove the Comptroller General, the principle is the same. Legislation giving Congress the effective power of removal over executive officers, even when applied prospectively, is questionable in view of the Constitution's exclusive vesting of the executive power in the President and his constitutional duty to take care that the laws be faithfully executed.

[4] The Constitution specifies the role of the Congress in the removal of executive officers: the House has the sole power of impeachment, U.S. Const. art. I, §2, cl. 5, and the Senate has the sole power to try all impeachments. *Id.,* art. I, §3, cl. 6.

Although the Tenure of Office Act of 1867 furnishes an historical example of legislation purporting to limit the terms of the Heads of Departments, that precedent hardly resolves our constitutional concerns.[5] The Tenure of Office Act led to a constitutional crisis of immense proportions and was repealed once the turmoil of the Reconstruction Period had subsided. While other issues were also involved, we believe that this prompt repeal is some evidence of the suspect nature of such limitations.

On policy grounds, we believe that history demonstrates the inadvisability of this legislation in light of the existing power of Congress to call high government officials to account for their conduct in office. Similarly, an electorate dissatisfied with a President's direction of his subordinate officers has not hesitated to express its view through the Presidential ballot. So too, the electorate's satisfaction with such direction is expressed through the re-election of a President. The Constitution's mechanism for democratic, electoral expression should not be thwarted or made dependent upon idiosyncratic reasons which may determine the fate of an individual reconfirmation.

We are also concerned about the disruption to the operations of the government that would be occasioned by this proposal. The present disruption which occurs when a new President takes office, selects new administrators and secures their confirmation by the Senate is an adjunct to the President's constitutional responsibility for the execution of the laws. He must be able to select those who shall assist him in his constitutionally assigned task. There is, however, no corresponding constitutional justification for the interference with the operations of the government when a President seeks to retain officials who are in office.

We conclude, therefore, that S. 318 would be unconstitutional if applied to persons holding any of the offices covered by it on the effective date of the bill. Furthermore, in our judgment, the bill would be subject to serious constitutional doubt even if it had only a prospective effect. For these reasons, the Department of Justice strongly recommends against enactment of the legislation and will urge its veto should it be enacted.

The Office of Management and Budget has advised this Department that the submission of this report is in accord with the Administration's program.

JOHN R. BOLTON
*Assistant Attorney General*
*Office of Legislative Affairs**

---

[5] Section 1 of the Tenure of Office Act of 1867, 14 Stat. 430, provided in pertinent part
[t]hat the Secretaries of the Treasury, of War, of the Navy, and of the Interior, the Postmaster-General, and the Attorney-General, shall hold their offices respectively for and during the term of the President by whom they may have been appointed and for one month thereafter, subject to removal by and with the advice and consent of the Senate.
This provision was enacted during the struggle between Congress and President Andrew Johnson and was repealed immediately after President Grant assumed the Presidency Act of Apr. 5, 1869, §1, 16 Stat. 9. The position of the Postmaster General was not covered by this repeal because the limitation of the Postmaster General's term had been incorporated in the legislation codifying the laws governing the Post Office Department. This limitation on the tenure of the Postmaster General lasted until the recent establishment of the U S Postal Service.
*NOTE· This letter was drafted by the Office of Legal Counsel for the signature of the Assistant Attorney General for the Office of Legislative Affairs