**WASHINGTON ACTIVITY GROUP et al., Plaintiffs,**

v.

**George M. WHITE et al., Defendants.**

**Civ. A. No. 2296-70.**

United States District Court,
District of Columbia.

Dec. 7, 1971.

William A. Bradford, Jr., Ralph J. Temple, Washington, D. C., for plaintiffs.

Jeffrey F. Axelrad, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge.

This is an action for declaratory and injunctive relief brought by three anti-war groups and by an individual member of each group [1] against defendants, the Architect of the Capitol, the Chief of the United States Capitol Police, and the Sergeants-at-Arms of the House of Representatives and of the Senate. The complaint asserts that certain rulings and actions of the defendants violate plaintiffs' right to equal protection freedom of speech, petition and assembly protected by the First and Fifth Amendments.

---

1. The plaintiffs are the Washington Activity Group and its member Michael F. Jacobson, Women's Strike for Peace and member Edith Villastrigo, and Washington Committee to Put The Prisoner of War Issue into Perspective and member Diane Miller. The three groups are voluntary associations of citizens engaged in activities designed to influence the Federal Government and the Congress on public and foreign policy issues.

On June 4, 1970, certain displays appeared in the Crpyt of the United States Capitol which depicted the methods by which American prisoners-of-war (POWs) in Southeast Asia were detained. Plaintiffs, who sought a prompt termination of the war, requested permission to erect a display of their own. They were frustrated in their attempts and applied for a preliminary injunction in this Court to preclude defendants, the officials charged with the management of the Capitol, from interfering with the erection of their display. The relief was denied on the ground that the plaintiffs had not then fully complied with the prescribed procedures necessary to obtain exhibition space in the Capitol. Further attempts to comply proving unsuccessful, plaintiffs then moved for summary judgment, alleging violations of the First and Fifth Amendments. The defendants opposed the motion and filed a motion to dismiss the proceeding for lack of case or controversy. The Court concludes that plaintiffs are entitled to the relief sought and that the defendants' motion should be denied.

The facts of this case are not disputed. During the 91st Congress, the Subcommittee on National Security Policy and Scientific Developments of the House Committee on Foreign Affairs held hearings on American Prisoners of War in Southeast Asia. Appearing before that Subcommittee was a private citizen, H. Ross Perot, who had received some degree of public acclaim and attention through his attempt to fly food, medicine and supplies to American prisoners in North Vietnam. Mr. Perot testified before the Committee that release of the POWs would be expedited and accomplished when all Americans, regardless of their attitute toward the war, had mobilized their support behind this objective. He urged Congressmen and Senators to include the POW issue in their campaign platforms to achieve this goal. To each member of the Committee, he offered to erect in the Capitol replicas of the stockades and cells in which the POWs were imprisoned—if the Committee would obtain permission for him to do so in some "spot where every Congressman and Senator tends to pass every day . . . the cafeteria, the subway, you name it . . . I would like for the American people to see it because it produces an instant change of attitude concerning the prisoners."[2]

The Subcommittee Chairman, Representative Clement J. Zablocki, responded favorably to Mr. Perot[3] and following established procedure, obtained the consent of the Speaker of the House of Representatives, John W. McCormack, to place the displays in the area of the Crypt of the Capitol which was under the control of the House of Representatives. The concurrence of the Chairman of the Senate Committee on Rules and Administration, Senator Everett Jordan, was received for placing a display on the Senate side of the Crypt.

The displays, unveiled in a brief ceremony on June 4, 1970,[4] consisted of full-size replicas of a bamboo cage, an open pit, an isolation cell, a tree with manacles attached to it, two life-size figures of American POWs, and various photographs of prisoners and plaques of written material.

2. Hearings on American Prisoners of War in Southeast Asia, 1970, before the Subcommittee on National Security Policy and Scientific Developments of the Committee on Foreign Affairs, House of Representatives, Ninety-First Congress, Second Session, April 29, May 1 and 6, 1970, at pages 73 and 74.

3. Mr. ZABLOCKI. "Yes, you have read my mind. I would go one better by saying it is not only for the Senators and Congressmen to see, but where the greatest number of American people pass for them to see." Hearings on American Prisoners of War, supra, note 2, at page 74.

4. 116 Cong.Rec. H5149–5151 (daily ed, June 4, 1970). Remarks were made by Congressman Zablocki, Speaker McCormack, Mr. Perot, and the Honorable Warren Nutter, Assistant Secretary of Defense for International Security Affairs.

Upon learning of the Perot display, the plaintiffs then prepared one of their own consisting largely of a panel of photographs, approximately 3½ by 12 feet. Their announced purpose was to place the POW issue into perspective by demonstrating that "all sides and factions in the War, including civilians, incur suffering and the way to end all suffering is to end the War."[5] They offered their display to Representative Zablocki's Subcommittee and also sought permission for its erection in the Capitol Crypt from Speaker McCormack and Senator Jordan.

■ Representative Zablocki explained that his committee was unable to accept the exhibit since their jurisdiction permitted investigation only of the American Prisoner of War situation. Speaker McCormack's reply was a mere acknowledgement of the receipt of plaintiffs' letter. Senator Jordan stated he was unable to give permission because pursuant to 40 U.S.C. § 189,[6] only property of the United States could be exhibited in the Capitol, which was not true of plaintiffs' display.

Plaintiffs then applied to this Court for injunctive relief. At the hearing on the preliminary injunction, this Court found that the Perot displays were in fact the property of the United States but that plaintiffs had not fully complied "with the procedures required for the acceptance of their exhibit by the United States and its subsequent display."[7] The motion for a preliminary injunction was denied.

In the fall of 1970, plaintiffs tendered their display to Congressman George E. Brown who promptly accepted it as the property of the United States. The Congressman wrote Speaker McCormack on October 18, 1970, requesting that the display be placed in the Capitol. The Speaker acknowldged receipt of the letter, but did not reply to the request. A month later, on November 17, a second letter of Congressman Brown containing a similar request was dispatched to Mr. McCormack. Not until December 28, 1970, however, did the Speaker reply, first apologizing for having been too busy to take action on the matter and, second, regretting that it was then too late to act, since the 91st Congress would officially terminate five days later, on January 2, 1971.

■ Noting that the Perot display has been removed from the Capitol Crypt and that the 91st Congress had dissolved, defendants then moved to dismiss the entire proceeding as moot, alleging that no case or controversy remains between the parties to be adjudicated, citing Davis v. Ichord, D.C.Cir., 442 F.2d 1207 and Golden v. Zwickler, 394 U.S. 103, 89 S. Ct. 956, 22 L.Ed.2d 113 (1969). Neither of these cases is applicable to the instant situation. Each was concerned with parties who properly were denied declaratory relief from threatened future injury when such injury became impossible,[8] whereas here, accepting the validity of plaintiffs' claims for the purposes of the motion to dismiss, relief is sought for an injury which has already occurred and which is of a continuing nature. Plain-

---

5. Plaintiffs' Complaint for Declaratory Judgment and Injunctive Relief, par. 17.

6. 40 U.S.C. § 189, titled "Art Exhibits," stated:
 "No work of art or manufacture other than the property of the United States shall be exhibited in the National Statuary Hall, the Rotunda, or the corridors of the Capitol."
 The statute is applicable to this case because "[t]he Crypt of the Capitol is a passageway or area and has always been construed to constitute one of the corridors of the Capitol." Affidavit of

Mario E. Campioli, Assistant Architect of the Capitol, dated August 17, 1970, at page 2, Par. 4.

7. Findings of Fact and Conclusions of Law of August 28, 1970, Page 3 at Par. 3.

8. In Davis, the dissolution of Congress precluded a House Committee from thereafter issuing contempt citations under its subpoena power; a Congressman's withdrawal from politics in Zwickler made it impossible for anonymous campaign literature to be distributed against him in violation of state law.

tiffs on the other hand urge that Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), is determinative of the question of mootness. In *Powell,* the Court recognized that the House of Representatives is not a continuing body, but did not consider that dispositive of all claims which had arisen in the prior Congress. Rather, the Court examined the issues to determine whether any were still "live" and found that as to Powell's claim for back salary, in which he had "an obvious and continuing interest,"

> "That claim is still unresolved and hotly contested by clearly adverse parties." 395 U.S. at 498, 89 S.Ct. at 1952.

That reasoning is persuasive and applicable here. The dissolution of Congress is not *per se* determinative of the viability of plaintiffs' constitutional claims. As noted in another context, "The rights asserted, imbedded in the Constitution, are of a continuing character, and the Vietnam problem remains." Jeannette Rankin Brigade v. Chief of the Capitol Police, 137 U.S.App.D.C. 155, 157, 421 F.2d 1090, 1092 (1969).

Here, as in *Powell,* the dissolution of Congress has altered the status of certain defendants. The Sergeant-at-Arms, for example, was an official of the 91st Congress when suit was filed, lost his position when it disbanded, and was rehired by the 92nd Congress. He was acting as an official of the 92nd Congress when the question of mootness was raised. The Supreme Court was untroubled by this identical circumstance in *Powell.* This Court, mindful of Rule 25(d) (1) of the Federal Rules of Civil Procedure, sees no obstacle to plaintiffs' relief be-

cause of it. The nature of the relief sought remains unchanged; plaintiffs still desire to erect their display; the defendants, responsible for the use and maintenance of the Capitol, still preclude them from doing so. For these reasons, the Court finds that there is a viable controversy between the parties, and accordingly denies the motion to dismiss.

 At this point a comment on what appears to be the privotal issues is appropriate. Plaintiffs speak of freedom of expression and equal protection; defendants, of government property and their right to regulate space in the Capitol. While the Perot exhibit in the Capitol Crypt was composed of physical material, occupied space, and may or may not be government property, it served to disseminate an idea, to present a point of view on a controversial subject of current political concern, and to persuade others to adopt that point of view and engage in a variety of activities, some clearly political. Plaintiffs' exhibit is also physical material which occupies space and which may or may not be government property; its function is also to persuade, and its point of view differs significantly from that of the Perot display. Clearly, this proceeding is concerned with the clash and communication of ideas, an activity which holds a preferred position under our Constitution. The regulation of this activity must be in accord with the strict standards of the First Amendment. Thus, whether the acceptance and display of property is a matter within the unreviewable discretion of the Congress is not the relevant issue.[9] We are speaking basically not of property but of ideas, and there is no unreviewable discretion where the First Amendment is concerned.[10]

---

9. In Curran v. Laird, 136 U.S.App.D.C. 280, 420 F.2d 122 (1969), which was cited by defendants in support of their claim of discretion, the Court noted: "[O]ur decision does not involve personal rights and liberties [and] does not involve constitutional claims . . .". 136 U.S.App.D.C. 288–289, 420 F.2d 130–131.

10. Because of the nature of the case, the Court gives short shrift to defendants' sug-

gestion that they are immune from suit. Acts violative of constitutional rights are without authority and therefore unprotected by the doctrine of sovereign immunity. Smith v. Katzenbach, 122 U.S.App. D.C. 113, 351 F.2d 810 (1965). Additionally, no immunity flows to them by reason of the Speech or Debate clause, as demonstrated by Powell v. McCormack, 395 U.S. 486 at 501–506, 89 S.Ct. 1944, 23 L.Ed.2d 491.

■ The Court must initially inquire whether the Crypt is an appropriate forum for First Amendment expression. If it is, the rules which regulate access to it must be reviewed by a strict standard:

" . . . because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." N. A.A.C.P. v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

The standards governing access to forums for the purpose of First Amendment communication [11] require the Court to balance the proposed First Amendment activity against the other uses of the forum. In this case, the Court is relieved of the duty; the Perot exhibits have already been displayed in the Crypt and thus it has already been determined by the appropriate Congressional officials that the Capitol Crypt is a suitable location for topical political expression.[12]

■ The Court must then consider whether the regulations for the display of material in the Crypt are drawn with that degree of specificity required by the First Amendment. Since the plaintiffs have withdrawn their demand for space on the Senate side of the Capitol [13] two requirements remain: their exhibit must be government property, pursuant to 40 U.S.C. § 189, and they must obtain the approval of the Speaker of the House to erect it in the Crypt.[14] On the facts of this case, defendants are precluded from asserting this latter requirement, since the Speaker neither gave nor denied his consent after timely requests were made to him, but neglected to consider the matter. This Court is unaware of any principle of law which permits defendants to hold plaintiffs to a regulation which has been made impossible of performance by the person charged with administering it.

■ Were the First Amendment not at issue here, this Court would have little difficulty in finding 40 U.S.C. § 189 a valid exercise of the legislative power. Its purpose as reflected in the legislative history was to limit an unwarranted and garrish display of material in the Capitol, previous informal practices to this end having been completely unsatisfactory.[15] Such a purpose need

11. For the most recent review of these principles in this Circuit, see Business Executives' Move for Vietnam Peace v. Federal Communications Commission, D.C.Cir., 450 F.2d 642.

12. Indeed, the Speaker of the House noted at the unveiling ceremony:
"Yet I believe this exhibit is completely appropriate to this setting. When Congressman Zablocki requested permission for these replicas to be built I was quick to respond affirmatively for it seemed to me that the idea was a worthy one." 116 Cong.Rec. H5150, *supra* note 4.

13. See note at page 3 of plaintiffs' Points and Authorities in Support of Motion for Summary Judgment. Accordingly, the Court will dismiss this action as to defendant Dunthy, Sergeant-at-Arms of the United States Senate.

14. The Speaker has this authority pursuant to House Rules I(13) which reads:
"I. Duties of the Speaker.
"3. He shall have general control, except as provided by rule or law, of the Hall of the House, and of the corridors and passages and the disposal of the unappropriated rooms in that part of the Capitol assigned to the use of the House, until further order."
The Court may, of course, inquire into the language and application of House rules when constitutional rights are affected. "[The House] may not by its rules ignore constitutional restraints or violate fundamental rights . . . ." United States v. Ballin, 144 U.S. 1, 5, 12 S.Ct. 507, 509, 36 L.Ed. 321 (1891), cited in United States v. Smith, 286 U.S. 6 at 33, 52 S.Ct. 475, 76 L.Ed. 954 (1931); and see Yellin v. United States, 374 U.S. 109 at 144, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1962).

15. Mr. Blaine. " . . . everybody comes there with pictures that they want to exhibit, and the place looks like an old secondhand picture shop. Now, if you do not put it down absolutely, by a prohibition, you will always have the place cluttered up with unseemly articles. We do not want anything of the sort on exhibition."

not be inconsistent with freedom of expression.[16] It has always been recognized that there is no absolute right to exercise the First Amendment at any time and any place and that reasonable regulations, narrowly drawn, are necessary to permit the maintenance of order without which meaningful expression cannot flourish. Cox v. Louisiana, 379 U.S. 536 at 554, 555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1964). In determining whether this statute is such a reasonable regulation, the Court of necessity "shows great deference to the interpretation given the statute by the officers or agency charged with its administration." Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964). The "agency" in this case is the Congress itself.

■■■ The phrase "government property" is the focus of the Court's attention in this statute. Only material which comes within the definition of this phrase is eligible for display. Although the sponsors of the original statute assumed that the property to be exhibited would be purchased,[17] government property itself is not limited to this for it is well recognized that "the receipt of gifts, testamentary and nontestamentary, is within the ambit of federal powers. Uninterrupted usage from the foundation of the Government has sanctioned it." United States v. Burnison, 339 U.S. 87 at 90, 70 S.Ct. 503 at 505, 94 L.Ed. 675 (1949). Such gifts upon receipt become government property.

The Court found at the Preliminary Hearing that the gift of H. Ross Perot had become government property, since it has been offered to and accepted by the Subcommittee before which he appeared as an extension of his testimony. The Court has subsequently examined this proceeding closely, because acceptance by legislative committee represents the only practical method by which the plaintiffs could have their property accepted by the Government[18] and also because the acceptance of the Perot display by the Subcommittee provides the only example of the application of the statute in a First Amendment context.

■■■ While there is no specific authority for the acceptance of property by a legislative committee, such committees are traditionally vested with broad powers and considerable discretion. The objects of committee study may be tangible; witnesses may need to rely on exhibits to clarify their testimony. It would seem that legislative committees have the inherent authority to accept exhibits as the property of the government in order to carry out their legitimate functions.

As to the Perot display, the Court notes that it was never the subject of a Subcommittee examination or investigation, nor was it offered primarily as a visual clarification of oral testimony. It embodied a point of view shared by the members of the Subcommittee and Perot, and was accepted and displayed to persuade other Congressmen and the public to that view. The Subcommittee's exercise of this function would seem to require additional "inherent authority."

Mr. Maynard. "I agree with the gentleman entirely. We have the place cluttered up with objects put there as specimens of some trade, calling or pursuit, making it an advertising shop." Cong. Globe, 40th Cong., 2nd Sess. 3725 (1868). See also 8 Cong. Record 2078 (1879) (Remarks of Mr. Edmunds).

16. Neither party has suggested to the Court that the statute's initial purpose is not still vital.

17. Mr. Blaine. "If it is proper to be exhibited in the Capitol it is proper for the Government to secure it, and the Government can buy it." Cong. Globe, 40th Cong. 2nd Sess. 3725 (1868).
Mr. Edmunds. "I should like to have a law absolute that nothing shall come into the capitol except the property of the United States until it is bought, and then it will be the property of the United States." 8 Cong. Record 2078 (1879).

18. The Government, of course, has available to it a number of methods for the acquisition of property. Some statutory provisions for the acceptance of gifts are noted at Story v. Snyder, 87 U.S.App. D.C. 96 at 103–105, 184 F.2d 454 at 461–463 (1950).

The Court does not decide to what extent political persuasion is a legitimate Subcommittee function and how far its inherent authority to accept exhibits may extend in the performance of that function, for the Subcommittee's demonstrated interpretation of "government property" renders § 189 unenforceable on First Amendment grounds. The effect of the Perot interpretation is to vest the Subcommittee with complete, standardless discretion to determine what shall be "government property" and what shall not and thus to control access to the Crypt. The single restriction under the Perot standard is that the prospective donor appear before the Subcommittee: a matter completely within its control.

No deference need be shown by the Court to an interpretation of a statute which is clearly unconstitutional. It is a basic tenet that there is no unreviewable discretion where the First Amendment is concerned.[19] Section 189 as presently interpreted is violative of the plaintiffs' constitutional rights and cannot be enforced as to them.

Since there are no regulations regarding the erection of displays in the Capitol Crypt which can be applied to plaintiffs, the principles of the "open forum" doctrine, recently applied in Business Executives' Move For Vietnam Peace *supra,* compel a declaration by this Court that the defendants cannot constitutionally deny plaintiffs access to the Crypt.

Having stated this much, and mindful of a responsibility to avoid needless friction between co-ordinate branches of government, plaintiffs' request for injunctive relief is deferred in order that defendants may consider whether they wish to take any action in accordance with the principles set forth in this opinion.[20]

The advantages in this method of procedure are articulated by our Circuit Court in their consideration of a suit with some related issues, involving access to a public park:

[Further court action] "may be obviated if the Park Service undertakes to define and announce a set of coherent park policies, clarifying the matters that are as yet unclear, and perhaps modifying the policies on further reflection as to the interaction of the various interests properly taken into account. [Footnote omitted.] Perhaps the case can be disposed of by agreement. If not, the court can consider the validity of Park Service policies in the light of a fuller presentation of the intent and content of those policies." Women Strike for Peace v. Hickel, 137 U.S.App.D.C. 29, 420 F.2d 597, 603, 604 (1969).

Congressional authorities may wish to adopt policies and implement regulations that will give § 189 a narrow construction, in compliance with standards set by the Supreme Court for First Amendment expression.[21] On the other hand, the authorities may decide that the Crypt is, in the final analysis, an inappropriate location for First Amendment expression and preclude the display there of any exhibits.[22] Unlike streets and parks, it has never been held that there is an inherent right of access to a room such as the Crypt.[23]

Since such determinations by the defendants would significantly affect the type of injunctive relief contemplated by the Court, further proceedings in this case will be suspended for a period of at least 30 days, after which a status hearing will be held and the necessity of further relief decided upon.

19. See Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1968) and cases cited therein.

20. "A Court may grant declaratory relief even though it chooses not to issue an injunction . . . ." Powell v. McCormack, 395 U.S. 486, 499, 89 S.Ct. 1944, 1952, 23 L.Ed.2d 491 (1969).

21. See note 19, *supra.*

22. Because of these possibilities, the Court considers this case an inappropriate vehicle for class action and accordingly limits its relief to the individual and organizational plaintiffs.

23. This is recognized and criticized in Emerson, "The Right to Protest," in The Rights of Americans, p. 213 (N. Dorsen, ed., Pantheon Books, 1970).

It is, therefore, this 7th day of December, 1971,

Ordered, that this case shall be and hereby is, dismissed as to defendant Dunthy, Sergeant-at-Arms of the United States Senate, and it is further,

Ordered, that the motion of the defendants to dismiss for lack of case or controversy shall be, and hereby is denied, and it is further,

Ordered, that the motion of the plaintiffs for summary judgment is granted in part, in that the Court finds that they are entitled to declaratory relief, and it is further,

Ordered, that further proceedings in this case shall be suspended until January 10, 1972, for the reasons stated herein.